CECILIO ECHEANDÍA FONT, peticionario, *v.* J. ANTONIO ALVA-RADO, JEFE INTERINO DE LA PENITENCIARÍA INSULAR, demandado.

Núm. 424.—*Sometido:* Enero 12, 1944. *Resuelto:* Marzo 7, 1944.

*Juan B. Soto,* abogado del peticionario; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados del demandado.

El Juez Presidente Interino Señor Travieso emitió la opinión del tribunal.

Cecilio Echeandía Font, quien se encuentra recluso en la Penitenciaría Insular, radicó ante esta Corte Suprema una petición de Hábeas Corpus. En diciembre 16 de 1943 expedimos el auto solicitado para ser devuelto a la Corte de Distrito de San Juan. En diciembre 22 de 1943, considerando que la cuestión legal presentada en este caso es nueva en ésta jurisdicción y que su resolución habrá de afectar la situación de muchos convictos que en la actualidad se encuentran cumpliendo sentencia en la misma Penitenciaría, a moción del Fiscal de esta corte y con la conformidad del peticionario, dictamos una nueva resolución ordenando que el peticionario fuese traído ante este tribunal el 12 de enero de 1944.

El peticionario ingresó en la Penitenciaría Insular el 25 de agosto de 1925 a cumplir la sentencia de reclusión perpetua que le fuera impuesta por la Corte de Distrito de Arecibo. El 28 de marzo de 1941, el Gobernador de Puerto Rico le conmutó dicha sentencia y le redujo la pena a la de treinta años de presidio, que es la que el peticionario cumple en la actualidad.

Alega el peticionario que la sentencia de treinta años quedó extinguida y cumplida el día 12 de noviembre de 1942, de acuerdo con las disposiciones de la Ley número 180 de mayo 15 de 1943; y que no obstante la buena conducta y asiduidad por él observadas durante todo el tiempo que lleva en el penal, el Jefe de la Penitenciaría lo mantiene bajo su custodia y lo priva de su libertad, alegando como único fundamento que de acuerdo con su opinión la referida Ley nú-

mero 180 de mayo 15 de 1943 no es de carácter y efecto re-troactivos. La sección 1 de dicha ley en lo pertinente, lee así:

"Sección 1.—A partir del primero de abril de 1907, todo preso sentenciado o que en adelante se sentenciare, a prisión en la Peni-tenciaría o a prisión con trabajo en las cárceles de distrito de Puerto Rico, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se com-putarán desde su admisión a la cárcel o penitenciaría, siempre que ingresare con posterioridad al primero de abril de 1907.

"*       *       *       *       *       *       *

"(8) Por una sentencia de treinta años o más, trece días en cada mes."

Sostiene el peticionario que de acuerdo con lo dispuesto en la citada ley él tiene derecho a que se le rebajen trece días por cada mes natural transcurrido desde el 25 de agosto de 1925 o sea desde la fecha en que ingresó en la peniten-ciaría a cumplir la pena de reclusión perpetua.

En oposición a la petición sostiene el Fiscal:

(a) que los beneficios por buena conducta deben compu-tarse desde la fecha de la conmutación en adelante y no desde el ingreso del peticionario en el penal para cumplir la sen-tencia de reclusión perpetua; y

(b) que la citada Ley número 180 de 15 de mayo de 1943 no tiene efecto retroactivo.

La cuestión envuelta en este procedimiento es nueva en esta jurisdicción. Y la jurisprudencia que hemos podido en-contrar es escasa y hasta cierto punto contradictoria.

En el caso *In re McMahon,* 125 N. C. 38, 34 S. E. 193, el peticionario fué originalmente condenado a la pena ca-pital, la que le fué conmutada por la de reclusión perpetua y ésta reducida más tarde a la de doce años. Habiéndose enmendado la ley de North Carolina, aumentando a cinco días los beneficios por cada mes, en todas las senten-cias, el peticionario reclamó los beneficios de la nueva ley desde la fecha en que comenzó a cumplir la sentencia de reclusión perpetua, alegando que sí se le acreditaban esos

beneficios él tenía derecho a ser excarcelado por haber cumplido la sentencia de doce años. Sostuvo la Corte Suprema de North Carolina, que cuando a un condenado a reclusión perpetua se le conmuta esa sentencia por la de un término de prisión, los beneficios de la conmutación estatutaria por buena conducta, se le deben acreditar solamente desde la fecha de la conmutación de la pena de reclusión perpetua en adelante. Dicha corte se expresó así:

"Nuestro punto de vista sobre este caso nos obliga a estar en desacuerdo con la contención del peticionario y a sostener que él no tiene derecho a nada bajo las leyes de conmutación estatutaria, y que él no tenía derecho a nada bajo la sentencia de muerte impuéstale originalmente; pero estamos obligados a sostener que él tiene derecho ahora a más de lo que tenía entonces, que tiene derecho ahora a la conmutación estatutaria como un confinado por un término de años.

"La discusión de este caso nos lleva a las conclusiones siguientes: (1) Que un confinado por vida no tiene derecho a la conmutación estatutaria contenida en la ley de 1899 o en el estatuto de 1885, o en la sección 3445 del Código. (2) Que un preso cuya sentencia ha sido conmutada de reclusión perpetua a un término de años, tiene derecho a la conmutación establecida por dichos estatutos, a partir de la fecha de tal conmutación. (3) Que la ley de 1899 era enmendatoria de las leyes anteriores, y solamente cambió la regla que debería seguirse después de su aprobación para determinar las conmutaciones estatutarias. (4) Que la aprobación de la ley de 1899 no privó a los confinados de la conmutación estatutaria a que se habían hecho acreedores hasta esa fecha, a la cual tienen aún derecho, así como también a la que les corresponda bajo la ley de 1899; que lo que ellos hubieren ganado antes de la aprobación de la ley de 1899 y lo que han ganado bajo la ley de 1899 podrá ser sumado para darles derecho a ser excarcelados si, mediante esa suma, se demuestra que tienen derecho a ello por haber cumplido el término de años por el que fueron encarcelados."

El caso de *State* v. *Wolfer*, 127 Minn. 102, 148 N. W. 896, parece sostener la doctrina contraria. Empero, dicho caso puede distinguirse del de *McMahon* por el hecho de que de acuerdo con el estatuto de North Carolina los créditos por

buena conducta deben hacerse de mes en mes; y no concediendo la ley beneficio alguno a los sentenciados a reclusión perpetua, no podía disminuirse la sentencia conmutada por el período servido bajo la sentencia de reclusión perpetua. De acuerdo con el estatuto de Minnesota, los créditos no se conceden de mes en mes. A los confinados en dicho estado no se les hacen rebajas mensuales por buena conducta, y no se les concede beneficio alguno hasta que estén en condiciones de ser excarcelados por la aplicación de todos los beneficios a que se hayan hecho acreedores por buena conducta.

Pasemos ahora a considerar el estatuto local o sea la Ley fijando rebajas en las sentencias de confinados en las instituciones penales de Puerto Rico, aprobada en 14 de marzo de 1907 (Comp. 1911, §§2047-2056) y enmendada por la Ley número 180 de mayo 15 de 1943 (pág. 653).

El primer párrafo de la sección 1, supra, es idéntico en ambas leyes. El legislador, teniendo en cuenta que el propósito de la ley era el mismo en 1943 que en 1907, no alteró dicho párrafo y se limitó a aumentar el número de días que en cada mes deberá acreditarse al confinado por buena conducta, de acuerdo con el término de prisión a que hubiere sido sentenciado. A los confinados por treinta años o más, se les aumentó el crédito de diez días a que tenían derecho bajo la ley de 1907 a trece días en cada mes.

El último párrafo de la sección 1, tanto en la ley original como en la enmendada, lee así:

"Dicha rebaja se hará por el mes natural, y si la sentencia de algún preso contuviere una fracción de mes, bien al principio o al fin de dicha sentencia, se le abonará un día por cada cinco días o parte de los mismos, contenidos en dicha fracción."

Dispone también la ley (sección 3) que la mala conducta del preso podrá ser castigada por las autoridades carcelarias "con la rebaja o cancelación de los abonos por buena conducta correspondientes al mes en que la falta se cometiere, y si ésta fuere de carácter grave, se someterá al preso a ma-

yor rebaja y cancelación de abonos mediante aprobación del superintendente de prisiones.''

El peticionario, mientras estuvo cumpliendo la sentencia de reclusión perpetua no tenía derecho a rebaja alguna por buena conducta, ni estuvo tampoco sujeto a las penalidades provistas por la sección 3 de la ley para los casos de mala conducta. Es obvio que a un confinado para el resto de su vida en nada podría beneficiarle el abono ni perjudicarle la rebaja o cancelación de beneficios previamente concedidos.

■■ La contención del peticionario de que él tiene también derecho a la conmutación estatutaria de trece días en cada mes, desde el 25 de agosto de 1925 en que ingresó a cumplir la pena de reclusión perpetua, es insostenible.

El lenguaje de la sección 1 de la ley de 14 de marzo de 1907 es claramente prospectivo. La ley fué aprobada el 14 de marzo para empezar a regir en esa misma fecha. Mirando hacia el futuro, el legislador dispuso que ''a partir del primero de abril de 1907'' todo preso sentenciado a prisión en la Penitenciaría ''que observare buena conducta y asiduidad, tendrá derecho'' a las rebajas provistas en la misma sección. El legislador no concede el beneficio de esas rebajas al preso que haya observado o hubiere observado buena conducta, sino al que la observare después de la aprobación de la ley.

El propósito fundamental de los estatutos que premian a los confinados con rebajas o abonos al término de prisión a que han sido condenados, es el de despertar en ellos el deseo de observar buena conducta para hacerse acreedores a los beneficios del estatuto. No es el propósito de esa legislación el de premiar al preso retroactivamente por la buena conducta que observó en el pasado. 41 Am. Jur. *Prisons and Prisoners,* secs. 41 et. seq.

El estatuto no contiene disposición alguna que expresamente declare que debe ser aplicado retroactivamente. Y ya hemos visto que de su contexto surge necesariamente que la intención de la legislatura fué todo lo contrario.

Considerando, pues, que tanto la ley de 14 de marzo de 1907 como la Ley núm. 180 de mayo 15 de 1943 son de efecto y carácter prospectivos, nos vemos obligados a resolver que el peticionario sólo tiene derecho a las rebajas a que se hubiere hecho acreedor por su buena conducta, o sea a diez días en cada mes, desde y a partir del 25 de agosto de 1925, fecha de su ingreso en la Penitenciaría. La ley vigente en esa fecha era la de 14 de marzo de 1907. Al serle conmutada la sentencia de reclusión perpetua por la de treinta años de presidio, el peticionario adquirió el *status* de un confinado por un término de treinta años contados desde la fecha de su ingreso en el penal, y desde esa fecha adquirió también el derecho a las rebajas de diez días por cada mes de buena conducta de acuerdo con el estatuto entonces vigente. La Ley núm. 180 de mayo 15 de 1943 comenzó a regir a los noventa días después de su aprobación, o sea el 13 de agosto de 1943. Desde esa fecha en adelante, el peticionario tiene derecho a que se le abonen trece días por cada mes durante el cual observare buena conducta.

*Por las razones expuestas, procede declarar sin lugar el recurso y anular el auto expedido.*

El Juez Asociado Sr. Snyder no intervino.