EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* EMILIO PIZARRO SOLÍS, acusado y recurrido.

*Número:* CE-87-324 *Resuelto:* 31 de enero de 1992

914

*Hon. Rafael Ortiz Carrión, Procurador General, Antonio Figueroa Rodríguez, Procurador General Auxiliar, y Norma Cotti Cruz, Subprocuradora General,* abogados de El Pueblo; *Raúl Guemárez Nieves,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

En este recurso el Pueblo plantea que un convicto que es declarado delincuente habitual debe cumplir la sentencia impuesta en años naturales, esto es, sin disfrutar de las bonificaciones que concede la Ley Orgánica de la Administración de Corrección por buena conducta y otras razones en las sentencias criminales ordinarias.

Recurre ante nos, el Pueblo, de la resolución del foro de instancia que ordenó a la Administración de Corrección que realizara, en favor del convicto habitual recurrido, los cómputos correspondientes a las mencionadas bonificaciones, al término de sentencia en su contra. Un análisis de las leyes aplicables nos mueve a confirmar dicha resolución. Veamos, en primer lugar, los hechos.

I

Por hechos acaecidos el *27 de febrero de 1981,* el *25 de marzo de ese año* el convicto recurrido fue encausado por el

delito de escalamiento agravado. En la acusación se le imputó, además, ser un delincuente habitual al haber sido convicto anteriormente por los delitos de escalamiento simple, Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, y violación.

El *3 de julio de 1981* fue encontrado culpable del delito de escalamiento agravado y declarado delincuente habitual. En vista de esa declaración de delincuente habitual, el foro de instancia lo sentenció a cumplir una pena de doce (12) años naturales de presidio.

Esta sentencia fue impuesta consecutivamente con la sentencia de cinco (5) a veinticinco (25) años que le había sido impuesta el 22 de abril de 1970 en el caso de violación (G-69-3474) y la de uno (1) a tres (3) años que el 5 de noviembre de 1975 le había sido impuesta, consecutivamente con la de violación, en el caso por infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, *supra* (G-75-2341). En el caso de escalamiento simple (G-80-2684) había sido sentenciado a pagar quinientos dólares ($500) de multa.

El 14 de noviembre de 1984, el convicto recurrido presentó una petición de hábeas corpus en la cual, entre otros señalamientos, se quejaba de que "una ve[z] el [T]ribunal [S]uperior fall[ó] al declararme delincuente habitual en el cas[o] G-81-727, dicho fallo ha sido motiv[o] para que la Administración de Corrección proceda a no aplicar ningún tipo de [b]onificación en la sentencia de 1[2] años declarado delincuente habitual". Anejo IV, pág. 13. Todo ello, según el convicto recurrido, violaba el Art. I del Reglamento de Bonificación por Buena Conducta y Asiduidad Observada por los Confinados en las Instituciones Penales de la Administración de Corrección, de 12 de agosto de 1974, la Ley de Sentencia Determinada, y el Art. 42 del Código Penal, 33 L.P.R.A. sec. 3204.

La Administración de Corrección se opuso a esta petición señalando que "[l]a sentencia de 12 años declarando

delincuente habitual al convicto de epígrafe no es bonificable" puesto que "[e]l artículo 74 del Código Penal de Puerto Rico establece que la sentencia que se imponga será siempre en años naturales. Esta disposición es una excepción a la Ley Orgánica de la Administración de Corrección (4 LPRA 1161) que establece que se bonificará toda sentencia de reclusión si el confinado observase buena conducta". Anejo V, pág. 1.

El 18 de agosto de 1987 el convicto recurrido presentó una moción en la que solicitaba que se le diera "pronta atención a sus planteamientos en particular lo referente a la no acreditación de las bonificaciones a que cree tener derecho". Anejo VIII, pág. 25.

El 26 de febrero de 1987, el foro de instancia dictó la resolución recurrida que le ordenaba a la Administración de Corrección que realizara, en favor del convicto recurrido, los cómputos correspondientes a las bonificaciones a que éste tuviera derecho.

Solicitada la oportuna reconsideración, el foro de instancia se sostuvo en su resolución.

Inconforme, acude el Pueblo señalando que:

Cometió error el Honorable Tribunal al interpretar que las bonificaciones que concede la Ley de Administración de Corrección por buena conducta y otros, contra sentencias ordinarias criminales, le son aplicables a las sentencias emitidas en "Años Naturales" contra convictos declarados criminales habituales. Petición de *certiorari*, pág. 3.

Expedido el auto, las partes han comparecido. Resolvemos.

## II

Debemos armonizar las disposiciones del Art. 74 del Código Penal, 33 L.P.R.A. sec. 3375, que definen y señalan la pena para los casos en que el convicto ha sido

declarado delincuente habitual, con las disposiciones de la Ley Orgánica de la Administración de Corrección, 4 L.P.R.A. secs. 1161 y 1162, y el Reglamento de Bonificación por Buena Conducta y Asiduidad Observada por los Confinados en las Instituciones Penales (en adelante Reglamento), que regulan lo concerniente al abono de términos a las sentencias ganado por el convicto al observar buena conducta, realizar estudios y/o servicios a la comunidad. Ello requiere que no sólo examinemos la cronología de las leyes concernidas, sino también otras leyes referentes a un mismo asunto que deben ser interpretadas refiriéndose las unas a las otras, para que lo que es claro en un precepto pueda explicar lo dudoso en otro. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18; *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989).

 Debemos, además, tener presente que "[c]omo el propósito de la interpretación es lograr que se cumplan los fines intentados por el legislador, 'las leyes deben interpretarse y aplicarse en comunión con el propósito social que las inspira. No deben desvincularse del problema humano cuya solución persiguen, ni descarnarse de las realidades de vida que la sociedad misma ha proyectado sobre ellas, pues se tornaría ilusorio y se perdería en el vacío el deseo de justicia que las genera' ". *Figueroa v. Díaz*, 75 D.P.R. 163, 171 (1953), según citado en *García Pagán v. Shiley Caribbean, Etc.*, 122 D.P.R. 193, 208–209 (1988). Para cumplir ese objetivo es de gran ayuda el historial legislativo de las leyes concernidas. Finalmente, tratándose de un caso criminal, debemos tener presente el principio de legalidad que, en lo aquí pertinente, ordena que no se impongan "penas o medidas de seguridad que la ley no hubiere previamente establecido. No se podrán crear por analogía ... penas, ni medidas de seguridad", Art. 8 del Código Penal, 33 L.P.R.A. sec. 3031, y la prohibición a la aplicación

retroactiva de las leyes penales que sustantivamente afectan de forma negativa la situación del acusado. Art. II, Sec. 12, Const. E.L.A., L.P.R.A., Tomo 1. Primero, veamos el texto e historial de dichas leyes.

### III

El Art. 16 de la Ley Núm. 116 de 22 de julio de 1974 (4 L.P.R.A. sec. 1161), *vigente a la fecha de los hechos, en lo pertinente, disponía que:*

> *Toda persona sentenciada a cumplir término de reclusión en cualquier institución, que observare buena conducta y asiduidad,* tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate .... (Énfasis suplido.) 1974 Leyes de Puerto Rico 548–549.

El Art. 17 de la Ley Núm. 116, *supra*, 4 L.P.R.A. sec. 1162, añadía en lo pertinente:

> En adición a los abonos autorizados en la sección anterior *y en todo caso de convicción que no sea reclusión perpetua*, el Administrador de Corrección podr[á], discrecionalmente, conceder abonos a razón de no más de tres (3) días por cada mes en que el recluso esté empleado en alguna industria, esté realizando estudios como parte de un plan institucional que conlleve seis (6) horas de estudios durante el día, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución penal durante el primer año de reclusión. Por cada año subsiguiente, podrá abonarse hasta cinco (5) días por cada mes. (Énfasis suplido.) Leyes de Puerto Rico, *supra*, pág. 549.

Estos artículos establecían los distintos tipos de bonificación en la sentencia impuesta a los que podían ser acreedores los confinados de nuestras instituciones penales, a saber, por buena conducta y asiduidad,([1]) 4 L.P.R.A.

---

([1]) Este tipo de bonificación fue establecida originalmente por la Ley de 14 de marzo de 1907 (4 L.P.R.A. ants. secs. 633–636), enmendada por la Ley Núm. 180 de 15 de mayo de 1943 y por la Ley Núm. 93 de 21 de junio de 1966. Estas enmiendas

sec. 1161, por empleo en alguna industria, por estudios y/o por servicios prestados a la institución, 4 L.P.R.A. sec. 1162.

■ Esos artículos de la Ley Orgánica de la Administración de Corrección se han mantenido vigentes a través de los años. Desde la ley aprobada el 14 de marzo de 1907 (4 L.P.R.A. ants. secs. 633–636) hasta la Ley Núm. 116, *supra*, la Asamblea Legislativa ha regulado la fijación de rebajas a las sentencias de confinados en las instituciones penales de Puerto Rico por asiduidad, buena conducta y otras razones análogas.

■ El fin último de estos estatutos es fomentar la buena conducta, rehabilitación y readaptación del confinado a las normas de convivencia social que han de afrontar una vez salgan del penal. En *Echeandía v. Alvarado*, 63 D.P.R. 230, 235 (1944), señalamos al respecto:

> El propósito fundamental de los estatutos que premian a los confinados con rebajas o abonos al término de prisión a que han sido condenados, es el despertar en ellos el deseo de observar buena conducta para hacerse acreedores a los beneficios del estatuto.

■ Para implantar ese mandato de ley, la Administración de Corrección aprobó, el 12 de agosto de 1974, el Reglamento.([2]) En su exposición de motivos, éste dispuso:

> El título VIII de la ley que crea la Administración de Corrección dispone la rebaja en sentencia por buena conducta y asiduidad observada por los confinados durante su reclusión, provee, además, nuevos abonos en las sentencias por trabajos

_____

consistieron esencialmente en aumentar el número de días que en cada mes debía acreditarse al confinado por buena conducta. Finalmente fue enmendada por la Ley Núm. 27 de 20 de julio de 1989.

([2]) La Sec. 1 de la Ley Núm. 21 de 10 de julio de 1978 (4 L.P.R.A. sec. 1165) dispuso que:

"Se autoriza al Administrador a adoptar reglamentos referentes a la concesión, cancelación y restitución de abonos por buena conducta, trabajo y estudios de acuerdo con este Capítulo."

realizados en alguna industria; por trabajo o servicios en la institución penal; en labores agropecuarias; por estudios o en la prestación de servicios excepcionalmente meritorios o en el desempeño de suma importancia en relación con funciones institucionales. Así también se dispone lo relativo a la cancelación de abonos por buena conducta cuando el confinado incurra en violación de las normas de conducta o de los reglamentos institucionales y se provee para la restitución de tales abonos cancelados cuando se determine que la conducta posterior así lo justifica.

La bonificación debe de ser utilizada como un instrumento para fortalecer cambios positivos de actitudes y de conducta en los confinados. *Por lo tanto, las disposiciones de este Reglamento se aplicarán en la forma más justa y humana posible, de manera que el mayor número de reclusos pueda participar de sus beneficios.* (Énfasis suplido.) Exposición de Motivos, Reglamento de Bonificación por Buena Conducta y Asiduidad Observada por los Confinados en las Instituciones Penales, Administración de Corrección, 12 de agosto de 1974, pág. 1.

■ En el Art. I del Reglamento, *supra*, pág. 2, se expresan las distintas bonificaciones por buena conducta y asiduidad a las cuales es acreedora "[*t*]*oda persona* sentenciada a cumplir términos de reclusión en cualquier institución penal" —(énfasis suplido) íd.— en Puerto Rico. Dispone dicho artículo:

*Artículo I — Bonificación por Buena Conducta y Asiduidad*
*Toda persona* sentenciada a cumplir términos de reclusión en cualquier institución penal, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate:

. . . . . . . .

*Dicha rebaja se hará por el mes natural* y si la sentencia de algún recluso contuviera una fracción de mes, bien al principio o al fin de dicha sentencia, se le abonará un día por cada cinco días o parte de los mismos contenidos en dicha fracción.

La deducción por buena conducta y asiduidad podrá hacerse durante el tiempo que hubiere permanecido privada de su libertad cualquier persona acusada de cometer cualquier delito público, de ser sentenciada por los mismos hechos por los cuales hubiere sufrido dicha privación de libertad. (Énfasis suplido.) Reglamento, *supra*, Art. I, págs. 2–3.

■■■ Los abonos discrecionales por empleo en alguna industria o estudios y servicios a la institución penal están regulados por el Art. 4 del Reglamento, *supra.*

Finalmente, el Art. 8 del Reglamento, *supra*, establece expresamente *quiénes no son elegibles* a estas bonificaciones adicionales. Al respecto señala:

> *Artículo 8 — Quiénes no son elegibles a Bonificación Adicional*
> No serán elegibles al beneficio de bonificación adicional aquellos confinados *que no se ajusten a las normas establecidas, que injustificadamente no cumplan con el plan de tratamiento institucional que se le haya trazado o que no observaren buena conducta.* (Énfasis suplido.) Reglamento, *supra*, Art. 8, pág. 7.

En síntesis, de las disposiciones de ley y del Reglamento vigentes *a la fecha de los hechos* en autos y referentes a las diversas bonificaciones a las sentencias se desprende que los confinados *declarados entonces* delincuentes habituales *no estaban expresamente excluidos de tales beneficios.* Por el contrario, las disposiciones de ley y del Reglamento vigentes expresamente disponían su aplicabilidad a *toda persona sentenciada a cumplir términos de reclusión* en una cárcel de Puerto Rico; específicamente en el caso de las bonificaciones por asiduidad y buena conducta.

La declaración de motivos del Reglamento expresamente señala, además, que tales bonificaciones aplicarán al mayor número de reclusos que sean acreedores a dichos beneficios. Más aún, sólo en el caso de las bonificaciones adicionales por trabajo, estudios y/o servicios a la institución, el Reglamento establece *expresamente* las exclusiones de tales beneficios, a saber: en todo caso de reclusión perpetua; a aquellos confinados que no se ajusten a las normas establecidas; a los que injustificadamente no cumplan con el plan de tratamiento institucional que se les haya trazado, o a los que no observen buena conducta.

■■■ No debemos, so pretexto de buscar la intención legislativa de las bonificaciones, adicionar limitaciones o

restricciones que no surgen del texto de la ley. *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966).

De particular relevancia es el hecho que las rebajas por buena conducta se debían acreditar por el mes natural, *Cf.* XXXVIII (Núm. 1967-24) Op. Sec. Just. Núm. 88-91 (1967), esto es, se reducen los días del mes natural. Nada había en esas leyes que impidiera que a los delincuentes habituales, que debían cumplir sus sentencias en años (meses y días) naturales, se les acreditaran las referidas bonificaciones una vez cualificaran para ello.

 Ahora bien, el Art. 74 del Código Penal, 33 L.P.R.A. ant. sec. 3375 (Sup. 1976), vigente cuando se sentenció al recurrido y cuando éste cometió los actos que dieron lugar a su convicción, disponía:[3]

> El convicto de delito grave que anteriormente hubiere sido sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros, se presume que demostrare una persistente tendencia a delinquir, y será declarado por el Tribunal delincuente habitual y *recluido para su tratamiento hasta lograr su readaptación social.*
> El máximo de esta reclusión podrá ser separación permanente de la sociedad mediante reclusión perpetua y su mínimo no será nunca menor de *doce años naturales.* (Énfasis suplido.) Ley Núm. 115 de 22 de julio de 1974, según enmendada por la Ley Núm. 10 de 1ro de diciembre de 1975, Leyes de Puerto Rico, pág. 1050.

[3] Los hechos delictivos en este caso ocurrieron el 27 de febrero de 1981. El Art. 74 del Código Penal, 33 L.P.R.A. sec. 3375, fue enmendado por la Ley Núm. 101 de 4 de junio de 1980 para conformarlo a la Ley de Sentencia Determinada, Ley Núm. 100 de 4 de junio de 1980 (34 L.P.R.A. secs. 1044 y 1044 n.) . Esa enmienda al Art. 74, *supra*, disponía:

"El convicto de delito grave que anteriormente hubiere sido sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros, se presume que demuestra una persistente tendencia a delinquir, y será declarado por el tribunal delincuente habitual y recluido para su tratamiento por un término fijo que no será nunca menor de veinte (20) años ni mayor de noventa y nueve (99) años. El término fijo que se imponga será siempre en años naturales."

Esta enmienda entró en vigor el 4 de marzo de 1981, fecha en que entró en vigor la Ley de Sentencia Determinada, Ley Núm. 100, *supra*, puesto que así lo dispuso la Sec. 2 de la Ley Núm. 101, *supra*.

La Ley Núm. 115, *supra*, colocó al citado Art. 74 dentro del capítulo del Código Penal correspondiente a las medidas de seguridad. En *Pueblo v. Reyes Morán*, 123 D.P.R. 786, 799–803 (1989), analizamos el historial legislativo del Art. 74, *supra*. Señalamos que:

> La Ley Núm. 115 de 22 de julio de 1974 (33 L.P.R.A. sec. 3001 *et seq.*), al adoptar el Art. 74 del Código Penal, *supra* —sobre "delincuente habitual"— lo colocó dentro del capítulo correspondiente a las medidas de seguridad. 1974 Leyes de Puerto Rico 471–472. En ese momento, el legislador concibió la disposición del delincuente habitual como una medida dual de seguridad y de reincidencia. *El propósito del artículo iba dirigido tanto a la consecución de la rehabilitación del convicto como a separar de la sociedad a aquellos que representaban un riesgo para la comunidad.* Por ello, el artículo proveía para la reclusión del convicto hasta que éste lograra su readaptación social.

> Cabe advertir que al aprobarse el Código Penal en 1974 se pospuso la vigencia del Art. 74 del Código Penal, *supra*, por el término de un (1) año. Con la aprobación de la Ley Núm. 146 de 3 de julio de 1975 (33 L.P.R.A. sec. 4628), la Asamblea Legislativa pospuso nuevamente la vigencia del Art. 74. *Sin embargo, estando así pospuesta, el legislador aprobó la Ley Núm. 10 de 1ro de diciembre de 1975* (33 L.P.R.A. sec. 3301). *Esta medida activó la disposición sobre delincuente habitual en su aspecto de medida punitiva de reincidencia. La ley excluyó, sin embargo, los elementos de medidas de seguridad contenidos en el Art. 74 del Código Penal, 1974 Leyes de Puerto Rico 471–472.* Además, adicionó el Art. 74A, 33 L.P.R.A. sec. 3375a, sobre las normas de determinación de reincidencia.

> *Llegado el 1980, la Asamblea Legislativa estableció en Puerto Rico un sistema de sentencia determinada. Dentro del proceso necesario de ajustes y enmiendas para conformar el Código Penal con dicho sistema, el legislador suprimió del texto original del Art. 74 del Código Penal, 1974 Leyes de Puerto Rico 471, la expresión "hasta lograr su readaptación social". De esta forma reafirmó aún más el cambio que iniciara en 1975, dirigido a suprimir del Art. 74, supra, según enmendado, el elemento de medida de seguridad y a constituirlo en una medida pura de reincidencia.*

> *Con una trayectoria y un historial legislativo tan diáfano y firme, es claro que desde 1975 el Art. 74 del Código Penal*, supra, *según enmendado*, ha sido *una medida pura punitiva de reincidencia*, según expresamos en *Pueblo v. Mattei Torres*, supra, *con excepción de los elementos de seguridad. Pueblo v. Feliciano Hernández*, 113 D.P.R. 371 (1982). (Énfasis en el original suprimido, énfasis suplido y escolio omitido.)

## IV

El Procurador General sostiene que "[c]laramente '*el espíritu de rehabilitación*' por el cual cobr[aron] vida las bonificaciones por buena conducta y otros contra sentencias ordinarias criminales no podría de ningún modo ser de aplicación a los casos especiales de sentencias en '*Años Naturales*' contra los *delincuentes habituales*, quienes ya agotaron tres (3) oportunidades como mínimo para lograr convalidar su 'rehabilitación' como *ente social* capaz de 'convivir' en sociedad, en vez de dañar a los demás como hizo cuando disfrutaba de libertad personal". (Énfasis en el original.) Petición de *certiorari*, pág. 8. No le asiste la razón *en el caso de autos*.

En primer lugar, y contrario al caso de *Pueblo v. Reyes Morán*, supra, el Art. 74 del Código Penal, *supra*, vigente y aplicable al caso de autos, aún se vislumbraba como una medida mixta de seguridad y punitiva de reincidencia. Véase Ley Núm. 10, *supra*, 33 L.P.R.A. secs. 3301, 3301 n., 3375 n., 3375a n. y 3391. Así lo demuestra el que aún en dicha ley se buscara el "tratamiento hasta lograr su readaptación social". Art. 74, *supra*, Sup. 1976.

En segundo lugar, entre el Art. 74 del Código Penal, *supra*, y los Arts. 16 y 17 de la Ley Orgánica de la Administración de Corrección, 4 L.P.R.A. secs. 1161 y 1162, aquí aplicables, el conflicto es más aparente que real. Si bien por un lado el Art. 74 del Código Penal, *supra*, pretende imponer una pena fija en términos de años naturales, la cual parece no tolerar bonificaciones, y por el otro lado las

disposiciones de bonificaciones no excluyen expresamente de su aplicación a los delincuentes habituales, éstas últimas contemplan los años naturales como base para su cómputo. Por lo tanto, carece de validez el argumento de que no le aplican las bonificaciones a las sentencias impuestas a los delincuentes habituales por ser éstas impuestas en años naturales, pues precisamente esa es la base para el cómputo de la bonificación. Cf. XXXVIII (Núm. 1967–24) Op. Sec. Just. 88-91 (1967).

Ese era el estado de derecho vigente antes de que se aprobara la Ley de Sentencia Determinada, Ley Núm. 100 de 4 de junio de 1980 (34 L.P.R.A. secs. 1044 y 1044 n.). A pesar de que las disposiciones sobre las bonificaciones a sentencias y sus enmiendas son anteriores a la Ley de Sentencia Determinada, y dicha ley específicamente establece que las sentencias que han de ser dictadas tendrían "término específico de duración" —el cual sería "fijo" en casos de delitos graves— nada dispuso sobre la exclusión de los delincuentes habituales (cuya sentencia sería determinada) de las bonificaciones dispuestas en la Ley Orgánica de la Administración de Corrección. Debemos, pues, presumir que la intención del legislador fue dejar inalteradas las disposiciones sobre bonificaciones, sin exclusiones, en los casos de sentencias determinadas; aun las que fueron impuestas a los delincuentes habituales.

■ Si alguna duda quedaba en cuanto a la falta de exclusión de los delincuentes habituales del derecho a los abonos de la Ley Orgánica de la Administración de Corrección, ésta fue disipada por el legislador al aprobar *la Ley Núm. 27 de 20 de julio de 1989* (4 L.P.R.A. secs. 1112(b) y (e), 1136 y 1161–1163). *Esa ley expresamente excluyó a los delincuentes habituales de los abonos dispuestos* en los Arts. 16 y 17 de la Ley Orgánica de la Administración de Corrección, *supra*. Al enmendar dichos artículos, expresamente dispuso en lo pertinente:

Título VIII. Bonificación por Buena Conducta.

Artículo 16.

*Se excluye* de los abonos que establece esta sección toda convicción que apareje pena de reclusión de noventa y nueve años, toda convicción que haya dado lugar a una determinación de reincidencia agravada o *de reincidencia habitual conforme establecen los incisos (b) y (c)* de la sec. 3302 del Título 33, la convicción impuesta en defecto del pago de una multa o aquella que deba cumplirse en años naturales. (Énfasis suplido.) 4 L.P.R.A. sec. 1161.

Artículo 17.

En adición a los abonos autorizados en la sección anterior, *y en todo caso de convicción que no haya sido excluida de conformidad con la sec. 1161 de este título,* el Administrador de Corrección podrá, discrecionalmente, conceder abonos a razón de no más de cinco (5) días por cada mes en que el recluso esté empleado en alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución penal durante el primer año de reclusión. (Énfasis suplido.) 4 L.P.R.A. sec. 1162.

 Esta enmienda, que entró en vigor el 20 de julio de 1989, *no es aplicable al caso de autos, pues claramente no puede tener efecto retroactivo.* Reiteradamente hemos resuelto que las leyes tienen carácter prospectivo a menos que la Asamblea Legislativa expresamente le dé efecto retroactivo. *Díaz v. Srio. de Hacienda,* 114 D.P.R. 865 (1983); *Vélez v. Srio. de Justicia,* 115 D.P.R. 533 (1984). Pero, además, en el campo penal la propia Constitución prohíbe la aprobación o aplicación de leyes *ex post facto.* Const. E.L.A., *supra.* Véase *Calder v. Bull,* 3 Dall. (3 U.S.) 386 (1798). Aplicar retroactivamente la Ley Núm. 27, *supra*, sería aumentar la pena del delito luego de consumados los hechos, *Calder v. Bull,* supra; *Pueblo v. López,* 70 D.P.R. 790, 791 (1950), en perjuicio del acusado. Ello lo prohíbe nuestra Constitución. *Emanuelli v. Tribl. de Distrito,* 74 D.P.R. 541 (1953); *Rivera Escuté v. Jefe Penitenciaría,* 92 D.P.R. 765 (1965).

El principio de legalidad también impide que les impongamos esa pena adicional a los delincuentes habituales.

Además, aplicar retroactivamente dicha enmienda vulneraría un interés libertario constitucionalmente protegido, creado por el estado de derecho anterior, que no excluía a los delincuentes habituales de los referidos abonos. Tal interés tiene la protección del debido proceso de ley. *Cf. Vitek v. Jones*, 445 U.S. 480 (1980).

La exclusión expresa, que mediante esta ley hizo el legislador, es la mejor muestra de que *bajo el estado de derecho anterior al 20 de julio de 1989* los delincuentes habituales eran acreedores a las bonificaciones de la Ley Orgánica de la Administración de Corrección cuando cualificaran para ello. Si no, ¿por qué la exclusión expresa? No podemos imputarle al legislador actuaciones inútiles, estériles o sin fin alguno. Si el legislador dispuso la exclusión expresa de los delincuentes habituales de los beneficios de las bonificaciones mediante la Ley Núm. 27, *supra*, fue porque en el estado de derecho anterior no existía tal exclusión; aun cuando desde 1980 el Art. 74 del Código Penal, *supra*, disponía que las sentencias impuestas a los delincuentes habituales serían cumplidas en años naturales. Si adoptáramos la posición del Procurador General en este caso, tendríamos que concluir que la aprobación de la Ley Núm. 27, *supra*, fue un acto legislativo inútil, fútil y sin sentido, puesto que en virtud del Art. 74, *supra*, los delincuentes habituales quedaban excluidos de las bonificaciones. Tal posición resulta insostenible.

En resumen, a un convicto declarado delincuente habitual antes del 20 de julio de 1989[4] le aplican los descuentos o bonificaciones al término de su sentencia por buena conducta, estudios y/o servicios a la comunidad, se-

---

[4] La Ley Núm. 27 de 20 de julio de 1989 (4 L.P.R.A. secs. 1112(b) y (e), 1136 y 1161–1163) entró en vigor el 20 de julio de 1989. Véase la Sec. 4 de dicha ley.

gún contenidos en la Ley Orgánica de la Administración de Corrección, 4 L.P.R.A. secs. 1161 y 1162, y en el Reglamento de dicha administración.

Por los fundamentos expuestos, *se confirma la resolución recurrida. Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López disintió con opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

El principal argumento que utiliza la Mayoría de los integrantes del Tribunal para sostener que "a un convicto declarado delincuente habitual antes del 20 de julio de 1989 [fecha de vigencia de la Ley Núm. 27 de 20 de julio de 1989 (4 L.P.R.A. secs. 1112(b) y (e), 1136 y 1161–1163)] le aplican los descuentos o bonificaciones al término de su sentencia por buena conducta, estudios y/o servicios a la comunidad" (opinión mayoritaria, pág. 928) es que la:

> … exclusión expresa, que mediante esta ley hizo el legislador, es la mejor muestra de que *bajo el estado de derecho anterior al 20 de julio de 1989* los delincuentes habituales eran acreedores a las bonificaciones de la Ley Orgánica de la Administración de Corrección cuando cualificaran para ello. Si no, ¿por qué la exclusión expresa? No podemos imputarle al legislador actuaciones inútiles, estériles o sin fin alguno. Si el legislador dispuso la exclusión expresa de los delincuentes habituales de los beneficios de las bonificaciones mediante la Ley Núm. 27, *supra*, fue porque en el estado de derecho anterior no existía tal exclusión; aun cuando desde 1980 el Art. 74 del Código Penal, *supra*, disponía que las sentencias impuestas a los delincuentes habituales serían cumplidas en años naturales. Si adoptáramos la posición del Procurador General en este caso, tendríamos que concluir que la aprobación de la Ley Núm. 27, *supra*, fue un acto legislativo inútil, fútil y sin sentido, puesto que en virtud del Art. 74, *supra*, los delincuentes habituales quedaban exclui-

dos de las bonificaciones. Tal posición resulta insostenible. (Énfasis en el original.) Opinión mayoritaria, pág. 928.

La mayoría del Tribunal no se percata de que existe otra posible razón para la acción legislativa realizada en el 1989: la posibilidad de que el legislador —ante las reclamaciones de los convictos de que habían sido ya sentenciados bajo las disposiciones del Art. 74 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3375— quiso reiterar, *y dejar claramente establecido de una vez y por todas*, que un delincuente habitual *no* tiene derecho a los descuentos o bonificaciones que establecen los Arts. 16 y 17 de la Ley Núm. 116 de 22 de julio de 1974 (4 L.P.R.A. secs. 1161 y 1162).

No debe perderse de vista que el citado Art. 74 del Código Penal, no obstante entrar en vigor el 1ro de diciembre de 1975, tuvo su origen en la Ley Núm. 115 de 22 de julio de 1974; esto es, el mismo es producto de una *legislación comprensiva* que fue aprobada en *la misma fecha* de los Arts. 16 y 17 de la Ley Núm. 116, ante.

En otras palabras, el legislador —obviamente consciente de las disposiciones de los Arts. 16 y 17 de la Ley Núm. 116, ante— expresamente dispuso, mediante la citada Ley Núm. 115 —y el Art. 74 del Código Penal, ante— que el "término fijo [de prisión] que se imponga [a un delincuente habitual] *será siempre en años naturales*". (Énfasis suplido.) Art. 74, ante.

*Obviamente el legislador quiso establecer una diferencia* —consistente en una pena más fuerte— *entre el convicto de un delito a quien se le impone una pena de "X" años* —el cual tiene derecho a las bonificaciones, o descuentos, provistos por los Arts. 16 y 17 de la Ley Núm. 116, ante— *y el convicto que es declarado delincuente habitual, que tiene que cumplir su pena en años naturales, esto es, sin descuentos y bonificaciones.*

A nuestro entender, *resulta obvio que la mayoría del Tribunal* —*en un impermisible acto de liberalidad judi-*

*cial— está legislando en beneficio de criminales habituales y empedernidos que nuestra Asamblea Legislativa, en beneficio de nuestra ciudadanía, quiso separar por más tiempo de la sociedad.*

Ese acto de legislación judicial en que incurre en el día de hoy el Tribunal, so color de liberalidad, constituye un acto judicial perjudicial a nuestra ciudadanía. Es por ello que disentimos. Revocaríamos, en consecuencia, la resolución recurrida.