Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| LUIS H. QUIÑONES SANTIAGO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202400503 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>GMA 1000-167-24 |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 11 de octubre de 2024.

Comparece Luis Hiram Quiñones Santiago (en adelante, recurrente) mediante un *Recurso de revisión judicial* para solicitarnos la revisión de la respuesta del área concernida[1] emitida, el 8 de julio de 2024, y notificada el 31 de julio de 2024, por el Departamento de Corrección y Rehabilitación (en adelante, DCR).[2] Mediante la determinación recurrida, el DCR dispuso, en síntesis, que el Comité de Clasificación y Tratamiento le asignaría trabajo al recurrente, tan pronto se recibiera la petición y se llevaran a cabo los trámites de rigor. A su vez, enfatizó que la petición de trabajo no había sido recibida. Sobre dicha *Resolución*, el recurrente presentó una oportuna solicitud de reconsideración.[3] Atendida la solicitud de reconsideración, mediante determinación, notificada el 29 de agosto de 2024, el DCR denegó la misma.[4]

Por los fundamentos que expondremos, se *confirma* la *Respuesta* recurrida.

_____
[1] Intitulada *Respuesta del área concernida / superintendente.*
[2] Expediente Administrativo, a las págs. 9-10.
[3] *Íd.*, a la pág. 11.
[4] *Íd.*, a las págs. 12-13.

Número Identificador

SEN2024_____

## I

El presente caso inició, el 9 de junio de 2024, cuando el recurrente suscribió una *Solicitud de remedio administrativo* a la División de Remedios Administrativos del DCR.[5] La misma, fue recibida el 17 de junio de 2024.[6] En su escrito, el recurrente alegó que tenía derecho a que se le asignara trabajo para poder bonificar. Detalló que, aunque no se le había asignado trabajo, estaba brindándole mantenimiento a las duchas, desde el 15 de marzo de 2024. Además, indicó que, a pesar de que le informaron que al momento no tenían vacantes disponibles, tenía conocimiento de que había una unidad vacía.

En respuesta, el 31 de julio de 2024, el DCR notificó la respuesta que nos ocupa.[7] En atención a la solicitud del recurrente, el DCR dispuso lo siguiente:

> El Comité de Clasificación y Tratamiento le asignará trabajo tan pronto se reciba la petición, (por parte del Oficial asignado a supervisar dicha plaza). Luego, el procedimiento a seguir es enviar la petición al área médica para su aprobación y entonces será citado a comité para la asignación de trabajo. Al presente dicha petición no ha sido recibida, se le dará seguimiento.[8]

En desacuerdo, el 2 de agosto de 2024, el recurrente instó una solicitud de reconsideración, recibida en la División de Remedios Administrativos, el 9 de agosto de 2024.[9]

En respuesta, el 29 de agosto de 2024, el DCR notificó su *Respuesta de reconsideración al miembro de la población correccional,*[10] denegando la solicitud de reconsideración.[11]

Así las cosas, el 9 de septiembre de 2024, el recurrente presentó un *Recurso de revisión judicial* en el cual alzó la comisión de los siguientes dos (2) errores:

---

[5] Expediente Administrativo, a la págs. 5-6.
[6] *Íd.*, a la pág. 5.
[7] *Íd.*, a las págs. 9-10.
[8] *Íd.*, a la pág. 10.
[9] *Íd.*, a la pág. 11.
[10] *Íd.*, a la pág. 13.
[11] *Íd.*, a las págs. 12-13.

Primer Error:

Err[ó] el Departamento de Correcci[ó]n y Rehabilitaci[ó]n cuando la socio penal Diana Soto no asignarme (sic) por comit[é] al trabajo despu[é]s de mantenerme alrededor de un mes trabajando de manera engañosa y tomar represa[l]ia por recurri[r] a remedios administrativos cuando el mismo <u>Reglamento para Atender Las Solicitudes de Remedios Administrativos Radicadas por Los Miembros de la población correccional[,]</u>

<u>Regla XI Prohibición contra represalias</u>

1- No se tomar[á]n represa[l]ias contra los miembros de la pobliaci[ó]n correccional que de alguna manera solicite[n] o participen de los servicios de la Divi[s]i[ó]n.

Segundo Error:

Err[ó] el Departamento de Correcci[ó]n y Rehabilitaci[ó]n en el anejo 2 dice unos alegatos totalmente diferentes al que se e[x]presa en el anejo 4 totalmente la Sra. Soto le fa[l]ta alaverdad (sic) ella trat[ó] de engañar alegando que yo trabaj[é] un mes aproximado voluntariamente si ubiera (sic) sido haci (sic) lo cual no fue que confinado ubiera (sic) tenido prioridad obvio que el que trabaj[ó] voluntariamente que la fa[l]sedad de sus alegatos queda claramente estable[c]ido. Queda preponderantemente demostrado que dio información falsa solo hay que compara[r] el anejo 2 con el anejo 4. <u>Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los miembros de la población correccional.</u>

<u>Regla VII Responsabilidad de los empleados</u>

2- El proveer intencionalmente información falsa o incompleta, podr[á] servir de base para acciones disciplinarias contra el empleado que incurra en tal conducta.

Junto al recurso instado, el recurrente presentó, además, una solicitud para litigar como indigente, la cual se autorizó mediante *Resolución,* emitida el 18 de septiembre de 2024,

El 25 de septiembre de 2024, compareció el DCR, por conducto de la Oficina del Procurador General de Puerto Rico, para presentar copia certificada del expediente administrativo. Por otro lado, el 9 de octubre de 2024, compareció el DCR, por conducto de la Oficina del Procurador General para presentar su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

II

## A. Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[12] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[13] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[14] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[15] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[16] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[17] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados,

---

[12] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[13] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[14] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[15] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[16] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[17] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).

la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[18]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[19] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias, siempre que surja del expediente administrativo evidencia sustancial que las sustente.[20] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[21] En cuanto a la referida evidencia sustancial, se ha definido como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[22] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[23] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[24] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[25]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar

---

[18] *Asoc. Vec. Altamesa Este v. Municipio de San Juan*, 140 DPR 24, 34 (1996).
[19] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[20] *Íd.*
[21] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[22] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[23] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[24] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[25] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra ed., Colombia, Ed. Forum, 2013.

prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[26] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[27] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[28] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[29] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[30] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[31]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[32] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de

---

[26] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[27] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[28] *Otero v. Toyota*, supra, a la pág. 728.
[29] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.
[30] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).
[31] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).
[32] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).

intervenir.[33] Ahora bien, esta deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[34]

### B. Bonificaciones por trabajo

La bonificación se refiere a la posibilidad de que el Estado considere cumplida la pena de reclusión antes de que el convicto cumpla con su condena. Por consiguiente, ello representa una expectativa de los confinados en cuanto a la fecha en la que cual podrán obtener su libertad.[35] Además, la bonificación es un instrumento para "fomentar la buena conducta, rehabilitación y readaptación del confinado a las normas de convivencia social que han de afrontar una vez salgan de la cárcel".[36] A su vez, el referido instrumento se estableció con la intención de fomentar cambios positivos de conducta y actitud en la población correccional.[37]

El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011[38] regula todo lo relacionado a las bonificaciones.[39] En lo referente a las bonificaciones por trabajo, estudio o servicios, el Artículo 12 de la antedicha ley establece que:

> A toda persona sentenciada a cumplir pena de reclusión por hechos cometidos con anterioridad o bajo la vigencia del Código Penal de Puerto Rico vigente, [. . .] el Secretario o el Presidente de la Junta de Libertad Bajo Palabra, según aplique, podrán conceder bonificaciones a razón de no más de cinco (5) días por cada mes en que el integrante de la población correccional o liberado por la Junta de Libertad Bajo Palabra esté empleado en

---

[33] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

[34] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.

[35] *Carrasquillo Román v. Institución Correccional Bayamón*, 204 DPR 699, 706 (2020); *Álamo Romero v. Adm. Corrección*, 175 DPR 314, 330 (2009).

[36] *Carrasquillo Román v. Institución Correccional Bayamón*, supra, a la pág. 706, citando a *Pueblo v. Pizarro Solís*, 129 DPR 911, 920 (1992).

[37] *Pueblo v. Pizarro Solís*, supra, a la pág. a la 921.

[38] Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII.

[39] *Carrasquillo Román v. Institución Correccional Bayamón*, supra, a la pág. 709.

alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución correccional durante el primer año de reclusión. Por cada año subsiguiente, podrá abonarse hasta siete (7) días por cada mes.[40]

Por otra parte, precisa destacar que, conforme al Reglamento Interno de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios Excepcionalmente Meritorios (Reglamento Interno de Bonificación) las bonificaciones por trabajo serán otorgadas de acuerdo al ciclo de bonificación que corresponda a cada miembro de la población correccional. En mérito de lo anterior, si algún miembro trabaja fuera del ciclo de trabajo asignado, este tiempo no será considerado al momento de computar la bonificación. Asimismo, el reglamento es enfático en que ningún miembro de la población correccional puede tener derecho a bonificación adicional si no está oficialmente asignado a realizar una labor. Ello, puesto que es el Comité de Clasificación y Tratamiento quien debe oficializar la asignación de trabajo a los sentenciados.[41]

Igualmente, el Manual de Normas y Procedimiento sobre Oportunidad de Empleo y Trabajo para Miembros de la Población Correccional dispone que "[e]s política de la Administración de Corrección (AC) proveer a los miembros de la población correccional experiencias de trabajo o empleo remunerado para fortalecer su autoestima, combatir el ocio y proveerles de rehabilitación".[42] Sin embargo, deja claro que es el Comité de Clasificación y Tratamiento, quien a su discreción, asignará labores o empleo, tomando en consideración las recomendaciones del técnico sociopenal a cargo del caso o del superintendente.[43]

---

[40] Plan de Reorganización Núm. 2-2011, *supra*, 3 LPRA Ap. XVIII, Art. 12.
[41] Reglamento interno de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios del Departamento de Corrección y Rehabilitación de 28 de octubre de 2020, a la pág. 14.
[42] Manual de normas y procedimiento sobre oportunidad de empleo y trabajo para miembros de la población correccional de 22 de junio de 2000 (Manual de normas y procedimiento), a la pág. 1.
[43] Manual de normas y procedimiento, *supra*, a las págs. 2-3.

## III

En su recurso de revisión, el recurrente sostiene, en síntesis, que el DCR erró al no asignarle trabajo, a pesar de que estuvo varios meses brindándole mantenimiento a las duchas. Además, planteó que el DCR le proveyó información falsa, dado a que él tenía conocimiento de que había vacantes disponibles.

Según reseñamos en nuestra previa exposición doctrinal, si la parte afectada no demuestra la existencia de prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial, este Tribunal debe respetar la determinación de la agencia y no sustituir su criterio.[44] Ello, pues que esta Curia les debe una gran deferencia a las agencias administrativas, debido a la vasta experiencia y conocimiento especializado sobre los asuntos que les han sido encomendados. Por consiguiente, de entender que la determinación de la agencia es razonable, no debemos alterar los dispuesto por la misma.[45]

En el caso de marras, el recurrente instó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos del DCR, en la cual alegó que tenía derecho a que se le asignara trabajo para poder bonificar. En respuesta, el DCR le indicó lo siguiente:

> El Comité de Clasificación y Tratamiento le asignará trabajo tan pronto se reciba la petición, (por parte del Oficial asignado a supervisar dicha plaza). Luego, el procedimiento a seguir es enviar la petición al área médica para su aprobación y entonces será citado a comité para la asignación de trabajo. Al presente dicha petición no ha sido recibida, se le dará seguimiento.[46]

Luego de realizar un minucioso examen del expediente administrativo del remedio solicitado ante el DCR, no encontramos nada que demuestre que la determinación de la agencia no estuvo basada en evidencia sustancial o que haya sido irracional. A esos

---

[44] *Otero v. Toyota*, supra, a la pág. 728.
[45] *Rolón Martínez v. Supte. Policía,* supra, a la pág. 35.
[46] Expediente Administrativo, a la pág. 10.

efectos, no tenemos facultad para intervenir con la *Respuesta* recurrida. Más aun cuando, según esgrimimos, tanto el Reglamento Interno de Bonificación y el Manual de Normas y Procedimientos son enfáticos en que es el Comité de Clasificación y Tratamiento quien, a su discreción, oficializa la asignación de trabajo al miembro de población correccional.[47] Por consiguiente, no es correcta la alegación del recurrente, de que tiene un derecho a que se le asigne trabajo para poder bonificar, dado que queda a discreción del aludido comité la asignación de trabajo. Por otro lado, a pesar de que el recurrente, presuntamente, a la fecha en la cual presentó la solicitud de remedio, llevaba varios meses brindándole mantenimiento a las duchas, estas labores las estaba realizando voluntariamente, no a razón de una asignación oficial. Conforme esbozamos, el Reglamento Interno de Bonificación es claro en que ningún miembro de la población correccional puede tener derecho a bonificación adicional si no está oficialmente asignado a realizar una labor.[48] Así, pues, en virtud de todo lo antes expuesto, nos es forzoso concluir que los errores esgrimidos por el recurrente no se cometieron.

IV

Por los fundamentos que anteceden, se *confirma* la *Respuesta* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[47] Reglamento interno de bonificación, *supra*, a la pág. 14; Manual de normas y procedimiento, *supra*, a las págs. 2-3.
[48] Reglamento interno de bonificación, *supra*, a la pág. 14.