EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>vs.<br><br>José O. Candelario Ayala<br><br>Peticionario | Certiorari<br><br>2005 TSPR 165<br><br>166 DPR ____ |

Número del Caso: CC-2004-585

Fecha: 8 de noviembre de 2005

Tribunal de Apelaciones:

Región Judicial de Bayamón, Panel VI

Panel integrado por su Presidente Juez Arbona Lago, el Juez Urgell Cuebas y la Juez Feliciano Acevedo.

Abogada de la Parte Peticionaria:

Lcdo. María de Lourdes Guzmán

Oficina del Procurador General

Lcdo. Roberto J. Sánchez Ramos

Lcdo. Salvador J. Antonetti Stutts
Procurador General

Materia: Art. 99 (a) del Código Penal

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

          vs.                       CC-2004-585    Certiorari

José O. Candelario Ayala

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 8 de noviembre de 2005.

En el caso de autos, este Tribunal ha decidido unánimemente confirmar los dictámenes del Tribunal de Primera Instancia y del Tribunal de Apelaciones. Resolvemos, pues, que la aplicación de la Ley Núm. 2 del 1 de enero de 1998 al caso de autos no es contraria a la prohibición de la Constitución del Estado Libre Asociado de Puerto Rico contra las leyes *ex post facto*. Los delitos en cuestión no estaban prescritos al momento de presentarse las denuncias.

Se devuelve el caso al foro de instancia para que continúen los procedimientos allí, conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Presidente señor Hernández Denton emitió Opinión de Conformidad, a la que se une la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Fuster Berlingeri emitió Opinión de Conformidad.


                                    Dimarie Alicea Lozada
                         Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                      CC-2004-585      Certiorari

José O. Candelario Ayala

    Peticionario

Opinión de Conformidad emitida por el Juez Presidente señor Hernández Denton a la cual se une la Jueza Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico a 8 de noviembre de 2005.

El señor José O. Candelario Ayala acude ante nos solicitando que revoquemos una sentencia del Tribunal de Apelaciones en la que se determinó que los delitos de violación que se le imputan no están prescritos. Alega, en síntesis, que no se le puede aplicar retroactivamente la Ley Núm. 2 de 1 de enero de 1998 pues ello equivaldría a aumentarle los términos prescriptivos de los delitos que se le imputan en contravención a la protección constitucional contra legislación *ex post facto*.

Aunque estamos de acuerdo con el criterio unánime de este Tribunal de que los delitos imputados a Candelario Ayala no están prescritos, hemos decidido suscribir esta Opinión de Conformida

con el propósito de expresar nuestra posición de que la prohibición contra leyes *ex post facto* solo aplica a leyes sustantivas y no a leyes procesales.

Por entender que la ley cuya aplicación retroactiva Candelario Ayala cuestiona es una de carácter procesal que queda fuera de la prohibición contra leyes *ex post facto*, concluimos que actuó correctamente el foro apelativo al determinar que los delitos imputados no estaban prescritos. Veamos.

I.

El 16 de marzo de 2004 el Ministerio Público presentó denuncias contra Candelario Ayala imputándole la comisión del delito de violación técnica entre agosto 1992 y diciembre 1993 y de tentativa de violación en algún momento entre junio y julio de 1992.

Tanto en 1992 como en 1993 la ley vigente en cuanto a la prescripción de dichos delitos era la Ley Núm. 32 de 24 de mayo de 1988, que disponía un término prescriptivo de cinco (5) años **contados desde el momento en que la víctima del ataque sexual cumpliera los dieciocho años de edad.** La víctima tenía de doce a trece años de edad al momento de los hechos.  Por tanto, cumplió los dieciocho años el 3 de enero de 1998. Bajo la referida legislación quedaba claro que las acciones penales prescribirían el 3 de enero de 2003.

El 1 de enero de 1998 la Asamblea Legislativa aprobó la Ley Núm. 2 mediante la cual el término prescriptivo de los delitos en cuestión continuó siendo de cinco años, pero ahora **a ser contados desde que la víctima cumpliera los veintiún años de edad**. Bajo esta ley, que fue aprobada con posterioridad a la comisión de los hechos que aquí nos conciernen, los delitos imputados prescribirían el 3 de enero de 2006.

Oportunamente, Candelario Ayala solicitó la desestimación de las denuncias por haber prescrito los delitos imputados. La teoría de la defensa era que el término de prescripción debía ser computado a la luz de la ley vigente al momento de la comisión de los hechos, o sea, la Ley de 1988. Alegaba que de ser computado el término prescriptivo a tenor con la ley posterior aprobada en 1998, se le estaría aplicando retroactivamente a Candelario Ayala una ley penal que le desfavorece, en contravención a la prohibición constitucional contra las leyes *ex post facto*.

Por su parte, el Ministerio Fiscal se opuso argumentando que se le podía aplicar retroactivamente una ley que ampliaba los términos prescriptivos de los delitos imputados siempre y cuando dicha ampliación haya tenido lugar antes de haber transcurrido el término prescriptivo original. El foro de instancia emitió una resolución acogiendo el argumento del Ministerio Público.

Inconforme, Candelario Ayala recurrió al Tribunal de Apelaciones mediante *certiorari*. Dicho tribunal se negó a expedir el auto por entender que, tanto bajo **nuestra** constitución como bajo la de los Estados Unidos, es permisible ampliar los términos prescriptivos de un delito antes de que haya expirado el plazo original. Candelario Ayala recurre ante nos aduciendo, en esencia, los mismos planteamientos que expuso anteriormente.

## II.

Para expresarnos sobre el asunto que nos concierne es necesario aclarar el significado y alcance de la sección 12 del Art. II, de la Constitución del Estado Libre Asociado de Puerto Rico. Ahí se dispone, en lo pertinente, que "[n]o se aprobarán leyes *ex post facto*...".

En el pasado hemos resuelto que existen cuatro categorías de leyes que, de aplicarse retroactivamente, violarían la prohibición de leyes *ex post facto*; a saber:

1.  Toda ley que considera criminal y que castiga un acto que al ser realizado era inocente;
2.  Toda ley que agrava un delito o lo hace mayor de lo que lo era al momento de ser cometido;
3.  Toda ley que altera el castigo y que impone una pena mayor que la fijada al delito al momento de ser cometido; y
4.  Toda ley que altera las reglas de evidencia, y que exige menos prueba o prueba distinta a la exigida por la ley al momento de la comisión del delito para castigar al acusado. Fernández v. Rivera, 70 D.P.R. 900, a la pág. 903 (1949).

El efecto combinado de las primeras tres categorías es que se prohíbe la aplicación retroactiva de leyes que: (a) criminalizan conducta que no era delito al momento de la comisión de los hechos, (b) eliminan una defensa **sustantiva** del acusado que estaba disponible al momento de la comisión de los hechos, y (c) agravan la pena o las consecuencias penales de un acto con posterioridad a su comisión. *Véase*, Ernesto L. Chiesa Aponte, II Derecho Procesal Penal de Puerto Rico y Estados Unidos, a la pág. 553 (Forum, 1993).

El sentido y propósito de la cuarta categoría, no obstante, es más difícil de esclarecer. De lo que se trata, a grandes rasgos, es de la prohibición de aplicar retroactivamente *ciertas* leyes procesales y evidenciarias. Aunque no hemos abordado expresamente este asunto, existen varios pronunciamientos nuestros que, indirectamente, arrojan luz sobre el significado de dicha categoría.

Así, en Pueblo v. Pérez Méndez, 83 D.P.R. 539 (1961), el acusado alegó que se le violentó la protección contra leyes *ex post facto* al aplicársele retroactivamente una enmienda constitucional que le otorgaba al Tribunal Supremo la facultad de adoptar como suya una decisión emitida por una sala integrada por menos del total de los jueces del foro Supremo. Al rechazar dicho planteamiento, expresamos que la enmienda

no violaba la cláusula contra leyes *ex post facto* porque era de naturaleza procesal. A estos efectos concluimos que:

> [E]l hecho de estatuir un **nuevo procedimiento**, y la abolición de tribunales y creación de otros nuevos que **deja inalteradas las garantías _sustanciales_** que la ley vigente concede al acusado, no se considera dentro de la prohibición constitucional. Pérez Méndez, *supra*, a la pág. 545. (Énfasis suplido y citas omitidas)

Posteriormente, en Pueblo v. Casiano Vélez, 105 D.P.R. 33 (1976) se cuestionó la constitucionalidad de la aplicación retroactiva a un acusado de una regla que le concedía discreción al tribunal para ordenar que se radicara la apelación utilizando como base una exposición narrativa de la prueba en vez de una transcripción fiel y exacta de la evidencia oral. En esa ocasión rechazamos el argumento del acusado porque "la obtención de una transcripción de la evidencia oral en apelaciones criminales, **no es un derecho absoluto ni _sustantivo_**..." Casiano Vélez, *supra* a la pág. 47.

Unos años más tarde, en Pueblo v. Lebrón González, 113 D.P.R. 81 (1982), resolvimos que aplicar retroactivamente a un acusado la Regla 64(B)(1) de las de Evidencia, 32 L.P.R.A. Ap.IV, R. 64(B)(1), no viola la cláusula contra leyes *ex post facto*. En dicho caso tuvimos la oportunidad de aclarar la aplicabilidad de la

prohibición de leyes *ex post facto* a materia procesal y evidenciaria. En ese contexto concluimos que:

> [L]a prohibición constitucional sobre leyes ex post facto sólo cobra virtualidad si conlleva que evidenciariamente se requiera menos prueba que la exigida por la ley al momento de la comisión del delito para castigar al acusado... Lebrón González, *supra*, a la pág. 96.

Por último, en Pueblo en interés del menor FRF, 133 D.P.R. 172, (1993)[1] tuvimos que resolver si violaba la cláusula contra leyes *ex post facto* la aplicación retroactiva de una ley que ampliaba de forma desfavorable a un menor la jurisdicción del Tribunal de Primera Instancia para juzgarlo como adulto. Contestamos dicha interrogante en la afirmativa y, en el proceso de fundamentar nuestra posición, reconocimos explícitamente por primera vez que "[a] través de los años, se ha entendido que **la esencia** de la protección contra leyes ex post facto **se refiere a la ley penal *sustantiva: delito, pena y medidas de seguridad*.**" *Id.,* a la pág. 180, escolio 9. También tuvimos la oportunidad de reconocer en dicha decisión que en la esfera federal "la protección contra

---

[1] Ahí, en lo pertinente, se le restringió a un menor la defensa sustantiva de minoridad, que tenía disponible al momento de cometer los hechos. Dicha defensa estaba reconocida en el Artículo 29 del ahora derogado Código Penal del 1974, 33 L.P.R.A.§ 3151. Por tal razón, concluimos en ese caso que se aplicó retroactivamente al imputado una ley sustantiva desfavorable en violación a la prohibición contra leyes *ex post facto*.

leyes ex post facto **sólo aplica a derechos sustantivos y no a leyes procesales.**" *Id.*

Como se desprende de la anterior discusión, contamos con varios precedentes en nuestra jurisdicción que arrojan luz sobre la controversia en el caso de autos. De ellos se puede derivar, a grandes rasgos, que la protección contra leyes *ex post facto* cobra mayor virtualidad cuando la norma aplicada retroactivamente es de naturaleza sustantiva.[2] No obstante, en el pasado nunca hemos abordado directamente el asunto acerca de la aplicabilidad de la referida protección cuando de leyes procesales se trata. Por ello, procedemos ahora a examinar brevemente y **a modo ilustrativo** lo que han expresado otros tribunales y comentaristas sobre esta problemática.

En los países de tradición civilista, el principio general de que la ley procesal queda fuera de la protección contra la aplicación retroactiva de leyes penales desfavorables goza de aprobación. Ello en virtud de que en esas jurisdicciones es doctrina ampliamente

---

[2] Es necesario aclarar que, con anterioridad a los precedentes que acabamos de examinar, este Tribunal realizó ciertas expresiones en <u>Pueblo</u> v. <u>López</u>, 70 D.P.R. 790 (1950), que apoyan la contención de que las leyes procesales pueden ser *ex post facto*. No obstante, el *ratio decidendi* de <u>López</u>, *supra*, no tiene vigencia actualmente pues el caso federal que nos vinculó en esa ocasión fue revocado por el Tribunal Supremo de los Estados Unidos en <u>Collins</u> v. <u>Youngblood</u>, 497 U.S. 37 (1990).

aceptada que la ley sustantiva aplicable en un caso es la vigente al momento de la comisión de los hechos mientras que la ley procesal aplicable es la vigente al momento del proceso. A estos efectos, el Tribunal Supremo Federal de Alemania en Materia Penal ha expresado que "es obvio que, desde su entrada en vigor, **los nuevos preceptos del Derecho procesal rigen también respecto de los procedimientos ya en curso**". BGBHST 26, 289 (según citado en Claus Roxin, I Derecho Penal Parte General, a la pág. 164 (trad. Luzón Peña, et al, Civitas, 1997). Por ello se expresa en un reconocido tratado que "según el Derecho vigente la prohibición de retroactividad no rige para las **disposiciones procesales**". Hans Heinrich Jescheck & Thomas Weigend, Tratado de Derecho Penal Parte General, a la pág. 147 (5ª ed., Comares, 2000).

Similar criterio comparte el profesor Claus Roxin cuando expresa que "en el Derecho procesal en principio no rige la prohibición de retroactividad" ya que "el principio de legalidad se ciñe a las acciones punibles y a las sanciones que deben imponérseles". Roxin, *supra*, a la pág. 164.

De otra forma, el Profesor Fletcher, quien ha escrito extensamente sobre la gran importancia de la dicotomía ley procesal/ ley sustantiva a los fines de la aplicación de leyes *ex post facto*, asevera que "las materias puramente procesales no forman parte de la "ley"

que los individuos tienen un derecho a conocer antes de actuar". George P. Fletcher, Basic Concepts of Criminal Law, a la pág. 13 (Oxford, 1998) (traducción nuestra).

Por otro lado, debemos señalar que el Tribunal Supremo de los Estados Unidos llegó a la misma conclusión en Collins v. Youngblood, supra. A partir de dicho caso está claro que en el derecho federal las leyes procesales quedan excluidas de la protección contra leyes *ex post facto*. Posteriormente, en Carmell v. Texas, 529 U.S. 513 (2000), se expresó que la cuarta categoría de leyes *ex post facto* sólo incluye a leyes que alteran, en perjuicio del acusado, la suficiencia de la prueba o el quántum de evidencia necesario para lograr una convicción.

Debemos reconocer que en nuestra jurisdicción no hemos adoptado propiamente la distinción entre lo procesal y lo sustantivo. Tampoco la hemos rechazado, precisamente porque no hemos tenido la necesidad de abordar el asunto directamente. En este momento, sin embargo, se nos ha presentado una controversia cuya correcta resolución requiere primeramente que analicemos la diferencia entre las leyes procesales y sustantivas a los fines de determinar el alcance de la prohibición contra leyes *ex post facto*. Al adoptar este curso decisorio le damos paso a nuestros pasados pronunciamientos y nos beneficiamos de las opiniones de

múltiples y eminentes comentaristas tanto anglosajones como continentales.

Por todo lo antes expuesto, consideramos imprescindible analizar si la ley cuya aplicación retroactiva se cuestiona en el caso de autos es una procesal o sustantiva.

III.

A.

Procede ahora que determinemos si los estatutos que regulan la prescripción de la acción penal son sustantivos o procesales. Anteriormente hemos expresado que la prescripción **en el derecho civil** es sustantiva. Vera Morales v. Bravo Colón, 2004 T.S.P.R. 30, Ortega v. Tribunal Superior, 102 D.P.R. 405, a la pág. 407 (1974). Claro, dichas expresiones no son relevantes para los fines de determinar la naturaleza de la prescripción **penal** ya que las dos figuras persiguen diferentes propósitos y funcionan de manera distinta. Veamos.

La prescripción en el ámbito civil representa una especie de sanción para aquellos que no ejercitan sus derechos a tiempo. José Puig Brutau, Fundamentos de Derecho Civil, Tomo I, Vol. I, a la pág. 849-850 (Bosch, 1979). El fundamento de la prescripción en el campo criminal, por el contrario, es promover que el procesamiento del sospechoso se base en pruebas frescas y

fehacientes. <u>Pueblo</u> v. <u>Oliver Frías</u>, 118 D.P.R. 285 (1987), a la pág. 291. *Véase* también a Wayne R. LaFave, et. al, IV Criminal Procedure § 18.5(a).

Por otro lado, la prescripción en lo civil es una defensa afirmativa[3]. En lo criminal, la prescripción no funciona de la misma forma pues de lo que se trata verdaderamente no es de una defensa afirmativa **sino de un total y absoluto impedimento de procesar por la ofensa**. *Véase* R.A. Duff, "I Might be Guilty but You Can't Try Me": Estoppel and Other Bars to Trial, 1 Ohio St. J. Crim. L. 245, a la pág. 248 (2003).

Como tal, queda claro que existen importantes diferencias entre la prescripción en el derecho civil y en el penal. Dichas diferencias nos llevan a la conclusión de que la naturaleza de la primera figura no necesariamente condiciona la naturaleza de la segunda.

B.

En el pasado no hemos tenido oportunidad de expresarnos sobre la naturaleza procesal o sustantiva de la prescripción de la acción penal. No obstante, existen

---

[3] Nótese que en lo civil la prescripción no impide iniciar una reclamación. Dicha figura es más bien una defensa afirmativa a la cual puede renunciar el deudor. Incluso, siendo nuestro sistema de derecho uno rogado, si el deudor no utiliza la defensa de prescripción se entiende que la renuncia. Luis Díez-Picazo & Ponce de León, La Prescripción Extintiva en el Código Civil y la Jurisprudencia del Tribunal Supremo, a las págs. 107-109 (Thomson-Civitas, 2003).

ciertos pronunciamientos de tribunales federales y de comentaristas que, **a modo ilustrativo**, nos ayudan a aclarar esta controversia. Veamos.

De entrada, nos parece claro que la clasificación legislativa de una ley como "procesal" o "sustantiva" no es determinante a los fines del análisis constitucional acerca de la verdadera naturaleza de la ley en cuestión. Al respecto, el Tribunal Supremo de los Estados Unidos expresó que "el que la legislatura simplemente etiquete a una ley como "procesal" no la inmuniza de ser escudriñada bajo la cláusula de *ex post facto* " Youngblood, *supra*, a la pág. 47 (traducción nuestra). *Véase* también Ernesto L. Chiesa Aponte, *supra*, a la pág. 551. Esto implica que el hecho de que la prescripción se regule en el Código Penal en vez de en las Reglas de Procedimiento Criminal no resulta ser determinante para su clasificación como ley procesal o sustantiva. *Véase* Enrique Bacigalupo, Derecho Penal Parte General, a la pág. 135 (Hammurabi, 2ª ed., 1999) y George P. Fletcher, Basic Concepts of Criminal Law, a la pág. 10 (Oxford, 1998).

Por tal razón, al determinar la naturaleza de la prescripción para fines de la prohibición contra leyes *ex post facto,* nos debemos dejar llevar por sólidos argumentos de teoría y política criminal en vez de por clasificaciones legislativas arbitrarias.

A estos efectos, la mejor manera de darle contenido teórico a la dicotomía entre ley procesal y ley sustantiva en el ordenamiento penal es distinguiendo entre las leyes que establecen los elementos constitutivos del delito y las leyes que establecen los presupuestos de persecución del crimen. Las primeras son de naturaleza sustantiva mientras que las segundas son de naturaleza procesal. Esto significa que, tal como vislumbramos en <u>Pueblo en interés del menor FRF</u>, *supra*, la ley sustantiva es aquella que versa sobre los elementos del **"*<u>delito, pena y medidas de seguridad</u>*"** *Id*, a la pág. 180. Por el contrario, cualquier ley que se refiera a la forma o modo de perseguir el crimen debe ser considerada procesal y, como tal, queda fuera de la prohibición contra leyes *ex post facto*.

En vista de lo anterior, debemos determinar cuales son los "elementos constitutivos **del delito**". El delito presupone la existencia de un comportamiento humano, típico, antijurídico y culpable. *Véase* Santiago Mir Puig, Derecho Penal Parte General, a las págs. 145-150 (B de F, 7ª ed., 2004). Por ello se puede decir que los elementos de la ley penal **sustantiva** son los siguientes: (1) infracción de una prohibición (comportamiento típico), (2) sin que exista una defensa de justificación (antijurídico), y (3) sin que exista una defensa de excusa (culpable).

Por tal razón concluimos que sólo son sustantivas las leyes que inciden sobre alguno de los tres elementos que acabamos de mencionar. Cualquier ley que se refiera a otro tipo de defensas, como aquellas que limitan la forma en que el estado puede perseguir el delito, debe ser clasificada como *procesal*.

C.

Lo último que nos queda por determinar es si la defensa de prescripción funciona como la negación de alguno de los tres elementos constitutivos del delito o si, por el contrario, funciona como una limitación a la forma o modo de perseguir el crimen. Somos del criterio que la contestación correcta es la segunda. Veamos.

El único efecto de la prescripción de la acción penal es impedirle al Estado perseguir el delito. Oliver Frías, *supra*, a la pág. 290. Como tal, no debe quedar duda de que **la defensa de prescripción no incide sobre ninguno de los elementos del delito**. No sirve para negar que se violó una prohibición penal. Tampoco establece la existencia de una defensa de justificación o excusa.

El Profesor LaFave coincide con la anterior al expresar que las únicas defensas que no pueden eliminarse o restringirse retroactivamente son las que tienen que ver con "elementos esenciales del delito, con asuntos sobre los que el acusado puede alegar una justificación o

excusa y, por tanto, **sigue siendo la regla el que extender los términos prescriptivos antes de que hayan expirado no viola la cláusula *ex post facto***" Wayne R. LaFave, Criminal Law, a la pág. 115 (Énfasis suplido) (West, 4ª ed., 2003).

En fin, siendo la prescripción una ley procesal que no versa sobre los elementos constitutivos del delito, somos de la opinión de que dicha ley queda fuera de la protección contra legislación *ex post facto*. A igual conclusión han llegado numerosos tribunales y comentaristas. [4] El Profesor Fletcher defiende esta postura convincentemente, al expresar que:

> Los términos prescriptivos tienen muchos propósitos, incluyendo el de ponerle un límite al poder estatal para investigar y el de evitar juicios sobre la base de evidencia vieja y poco confiable. **Sería difícil decir que uno de estos propósitos era el proveer un incentivo [al actor] para cometer [un crimen] con la esperanza de salirse con la suya [de no ser procesado dentro del término prescriptivo original].** <u>**A base de este análisis podemos concluir que la defensa de prescripción es procesal y que es permisible constitucionalmente el que [una] legislatura la derogue retroactivamente.**</u>  (Énfasis suplido)

---

[4] Véase, por ejemplo, la decisión emitida por la Corte Constitucional de Alemania en su Sentencia de 1969 (BverfGE 25, 269) según discutida en Fletcher, *supra*, a la pág. 14. Las cortes federales también han llegado consistentemente a este resultado . <u>United States</u> v. <u>De La Mata</u>, 266 F.3d 1275 (11° Cir. 2001), <u>United States</u> v. <u>Grimes</u>, 142 F.3d 1342 (11° Cir. 1998). Ver también a LaFave, Principles..., *supra*, a la pág. 91. El Tribunal Supremo de los Estados Unidos, **aunque en *dictum*,** también parece favorecer este resultado en <u>Stogner</u> v. <u>California</u>, 539 U.S. 607 (2003).

(traducción nuestra) Fletcher, *supra*, a las
págs. 13-14.[5]

Debemos aclarar, sin embargo, que esto no significa
que nunca se puede atacar constitucionalmente una
actuación del estado mediante la cual se amplían los
términos prescriptivos. Por una parte, si la ampliación
de los términos prescriptivos le causara un estado de
indefensión al acusado, podría proceder un planteamiento
bajo el debido proceso de ley. Por otra parte, si se
lograra probar que la ampliación de los términos tuvo el
efecto de discriminar arbitrariamente en su contra,
también podría proceder un planteamiento bajo la igual
protección de las leyes.

---

[5] El Profesor Fletcher dedica la totalidad del primer
capítulo de su más reciente libro a elucidar la
importancia de la distinción ley procesal/ley sustantiva
a los fines de la protección contra leyes *ex post facto*
(Capítulo 1 – "Substance v. Procedure"). Como parte de su
discusión, el Profesor Fletcher admite que

"los términos prescriptivos...parecen ser una regla
procesal, pero pueden ser interpretados como [una regla]
sustantiva". Fletcher, *supra*, en la pág. 10 (traducción
nuestra).

Por ello, más adelante señala que

"en casos límite la distinción entre lo procesal y lo
sustantivo presenta problemas filosóficos. No podemos
clarificar la distinción sin una teoría acerca de la
naturaleza del derecho sustantivo y del asunto particular
que estamos tratando de clasificar, en este caso, los
términos prescriptivos". *Id.*

Luego de desarrollar rigurosamente la referida teoría, el
Profesor Fletcher concluye, tal como señalamos en el
cuerpo de nuestra ponencia, que

"a base de este análisis podemos concluir que la defensa
de prescripción es procesal y que es permisible
constitucionalmente el que [una] legislatura la derogue
retroactivamente." *Id.*, en la pág. 14.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

IV.

Candelario Ayala sostiene que no se le puede aplicar retroactivamente la Ley Núm. 2 de 1 de enero de 1998 pues eso equivaldría a aumentarle los términos prescriptivos de los delitos que se le imputan de forma incompatible con la cláusula constitucional contra leyes *ex post facto*. No le asiste la razón.

A Candelario Ayala no se le está aplicando retroactivamente ninguna de las cuatro categorías de leyes que son *ex post facto*. No se está criminalizando conducta que no era delito al momento de la comisión de los hechos. Los elementos de los delitos por los que se le acusa (violación y tentativa de violación) no han variado (primera categoría). Tampoco puede alegar que le han aumentado la pena de los delitos imputados (segunda categoría) o que le han restringido o eliminado alguna defensa de justificación o excusa (tercera categoría). Por último, Candelario Ayala tampoco puede sostener que se le está aplicando retroactivamente una regla que reduce el quántum o la suficiencia de la evidencia necesaria para encontrarlo culpable por los delitos imputados (cuarta categoría).

Candelario Ayala pretende que se le extienda la protección contra leyes *ex post facto* más allá de lo que hemos contemplado en nuestra jurisdicción. Tal y como expresamos anteriormente, las leyes que regulan la prescripción de la acción penal son de naturaleza procesal. Sin embargo, nuestra cláusula contra leyes *ex post facto* sólo protege contra aplicaciones retroactivas de leyes **sustantivas**.[6] Por tal razón, es constitucionalmente permisible que se amplíen retroactivamente los plazos prescriptivos en situaciones en que, como la del caso de autos, la acción legislativa extendiendo los términos prescriptivos tuvo lugar antes de que expiraran los plazos originales.[7]

Estamos convencidos de que la mejor manera de continuar el desarrollo de nuestra doctrina sobre leyes *ex post facto* es cimentándola en la cardinal distinción entre lo procesal y lo sustantivo. Ello porque un

---

[6] Debemos aclarar, como señalamos anteriormente, que conforme a la normativa esbozada por el Tribunal Supremo Federal en Carmell v. Texas, *supra*, la prohibición contra leyes *ex post facto* también protege contra aplicaciones retroactivas de leyes que alteran la suficiencia de la prueba o el quántum de evidencia necesario para lograr una convicción. En el caso de autos, no obstante, es claro que no estamos ante una ley de esta naturaleza.

[7] Este dato resulta ser particularmente importante pues, recientemente, el Tribunal Supremo de los Estados Unidos resolvió que es inconstitucional la aplicación retroactiva de una ley que revive términos prescriptivos ya expirados. Stogner v. California, 539 U.S. 607 (2003). Estos pronunciamientos, al condicionar la protección constitucional mínima federal en esta materia, nos vinculan.

análisis detenido de tanto la normativa federal vigente como de las opiniones de eminentes comentaristas anglosajones y civilistas revelan que el ámbito de aplicación de la protección contra leyes *ex post facto* depende de la naturaleza procesal o sustantiva de la ley que se pretende aplicar retroactivamente.

En vista de lo anterior, somos del criterio de que actuaron correctamente tanto el Tribunal de Apelaciones como el foro de instancia al negarse a desestimar la acusación en contra de Candelario Ayala bajo el fundamento de que la acción penal en su contra estaba prescrita.

Por ende, estamos conforme con la Sentencia emitida por este Tribunal.

FEDERICO HERNÁNDEZ DENTON

Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      vs.                        CC-2004-585    Certiorari

José O. Candelario Ayala

    Peticionario

Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 8 de noviembre de 2005.

> ***Ex post facto*** **laws are not permissible if they infringe on what individuals have a right to know when they act. They have a right to know those matters that bear on the morality of their actions. . .**
>
> **But engaging in highly immoral acts in the calculated hope of getting away with them is hardly worth the protection of the law.**
>
> **G.P. Fletcher**

En el caso de autos, nos toca resolver si la Ley Núm. 2 de 1 de enero de 1998, que extiende de 18 años a 21 años la edad de la víctima, a partir de la cual comienza a transcurrir el término prescriptivo del delito de violación técnica, constituye una legislación *ex post facto*, al aplicarse a hechos como los de este caso.

I

A José O. Candelario Ayala (en adelante, Candelario) se le denunció el 16 de marzo de 2004 por dos infracciones al Art. 99(a) del Código Penal de Puerto Rico vigente entonces, que tipificaba los delitos de violación técnica y tentativa de violación. El Ministerio Público imputó al peticionario haber violado a Elizabeth Castro Pérez entre los meses de agosto de 1992 y diciembre de 1993, y haber intentado violarla entre junio y julio de 1992. Elizabeth Castro nació el 3 de enero de 1980, por lo cual tendría de doce a trece años de edad al momento de los hechos alegados. Tanto en 1992 como en 1993, la ley vigente en cuanto a la prescripción de los delitos referidos era la Ley Núm. 32 de 24 de mayo de 1988, que disponía un término prescriptivo de cinco años contados desde el momento en que la víctima del ataque sexual cumpliera los dieciocho años de edad, lo que ocurrió el 3 de enero de 1998.

El 1 de enero de 1998, **faltando aún cinco años y dos días antes de que pudieran prescribir los delitos imputados en el caso de autos, según la legislación vigente entonces**, la Asamblea Legislativa aprobó la Ley Núm. 2 mediante la cual el término prescriptivo de los delitos en cuestión continuó siendo de cinco años, pero contados a partir de haber cumplido la víctima los veintiún años de edad. Se dispuso así una extensión del término prescriptivo que aquí nos concierne.

Conforme a lo anterior, es evidente que al amparo del estatuto vigente al momento de la alegada comisión de los

delitos en el caso de autos, éstos hubiesen prescrito el 3 de enero de 2003, antes de presentarse las denuncias contra Candelario. En cambio, al amparo de la enmienda dispuesta por la referida Ley Núm. 2 de 1 de enero de 1998 (en adelante Ley Núm. 2) los delitos aludidos no prescribirían hasta el 3 de enero de 2006, por lo que las denuncias en cuestión estarían en orden.

Así las cosas, el 17 de mayo de 2004, la defensa de Candelario presentó una moción ante el foro de instancia mediante la cual solicitó la desestimación de las denuncias. Alegó que los delitos en cuestión habían prescrito. Durante la vista celebrada el 19 de mayo de 2004, el Ministerio Público se opuso a la desestimación solicitada. Adujo que los delitos no estaban prescritos, en virtud de lo dispuesto por la referida Ley Núm. 2. Insistió el Ministerio Público en que por haberse aprobado dicha Ley antes de que la víctima hubiese cumplido los dieciocho años de edad, ésta se podía aplicar retroactivamente sin que se violara la prohibición constitucional sobre leyes *ex post facto*.

El Tribunal de Primera Instancia emitió una resolución el 7 de junio de 2004 y acogió el argumento de la fiscalía. Entendió el tribunal que la aplicación de la nueva ley no contravenía la prohibición contra leyes *ex post facto* porque, al momento de su aprobación, el periodo prescriptivo de los delitos imputados a Candelario no había transcurrido.

Inconforme con el dictamen referido, la defensa de Candelario acudió al Tribunal de Apelaciones donde, *inter alia*, reprodujo su argumento de orden constitucional de que

la aplicación aquí de lo dispuesto en la Ley Núm. 2 violaba la prohibición contra leyes *ex post facto*. El Tribunal de Apelaciones emitió una resolución el 25 de junio de 2004, y confirmó la decisión del Tribunal de Instancia.

De ese dictamen Candelario acudió ante nos mediante un recurso de *certiorari* y una moción en auxilio de jurisdicción y alegó lo siguiente:

> **Primero: Erró el Tribunal de Apelaciones al sancionar la aplicación retroactiva de un estatuto penal cuando el legislador no dispuso tal cosa y cuando la ley establece su aplicación prospectiva.**
>
> **Segundo: Erró el Tribunal de Apelaciones al concluir que la aplicación retroactiva de la Ley Núm. 2 no crea un estado de indefensión en el imputado, en una situación en que la ley no da aviso de su aplicación retroactiva y a la fecha de la presentación de las denuncias, el periodo prescriptivo original había caducado hacía más de un año.**
>
> **Tercero: Erró el Tribunal de Apelaciones al concluir que la aplicación de la Ley Núm. 2 a este caso no viola la prohibición de leyes "*ex post facto*".**

El 29 de junio de 2004 acogimos las solicitudes de Candelario y expedimos el auto de C*ertiorari*. La parte peticionaria presentó su alegato el 30 de agosto de 2004 y el Procurador General presentó el suyo el 15 de noviembre de 2004. Veamos.

## II

Debe atenderse, en primer lugar, la cuestión de si el legislador tuvo la **intención** de que la Ley Núm. 2 aplicase a casos como el de autos; es decir, a hechos ocurridos antes de

ser aprobada dicha Ley que aún no habían sido dilucidados penalmente en ese momento. Candelario alegó que la Ley Núm. 2 es de aplicación únicamente a nuevos delitos cometidos después del 1 de enero de 1998, cuando dicha Ley fue aprobada. Veamos.

La Ley en cuestión dispone expresamente en su sección dos que:

> **"Esta Ley comenzará a regir inmediatamente después de su aprobación."**

El claro sentido de esta disposición sobre la vigencia de la Ley Núm. 2 es que el Ministerio Público que debe ejecutarla y los tribunales del país que deben aplicarla, la pondrán en vigor **de inmediato** con respecto a los asuntos que vengan ante su consideración a partir del 1 de enero de 1998. Ello significa claramente que la Ley es aplicable **a denuncias o acusaciones que se presenten en los foros judiciales a partir de la fecha en que ésta comienza a regir**, aunque dichas denuncias o acusaciones se refieran a hechos delictivos que necesariamente tienen que haber acontecido previamente. Ninguna otra interpretación cabe razonablemente aquí, en vista del lenguaje tajante de la aludida Sección 2 de la Ley. Nótese que la Ley que aquí nos concierne no dispone de ningún modo que ésta regirá sólo con respecto a **hechos ocurridos con posterioridad a su fecha de vigencia,** como de ordinario se dispone cuando el legislador interesa establecer su carácter eminentemente prospectivo. Véase, Pueblo v. Rexach Benítez, 130 D.P.R. 273, 302–303 (1992).

La anterior interpretación está avalada, además, por la naturaleza e historial de Ley en cuestión. En su exposición de motivos se alude a un problema que existe **"en la actualidad"**, que es que los delitos sexuales contra los menores de edad pueden quedar impunes por no tener las víctimas o las autoridades tiempo suficiente para poner en marcha la administración de la justicia criminal. Poca lógica tendría que la medida esencial dispuesta por la Ley Núm. 2 para encarar dicho problema **actual**, que es la de **ampliar los términos** para procesar la comisión de tales delitos, no incluyese los crímenes que a ese momento estuviesen pendientes de denuncia o investigación. Más cónsono con tal propósito es reconocer, como lo hicieron los foros *a quo* y el Ministerio Público, que la Ley en cuestión se aprobó para cubrir no sólo los delitos futuros, sino también aquellos que aún no hubiesen prescrito en ese momento.

Es evidente, pues, que no tiene razón Candelario en cuanto a su planteamiento inicial. Aplica a su caso lo que la Ley Núm. 2 dispone.

III

Procede entonces que se examine la cuestión medular de este caso sobre si la aplicación aquí de la referida Ley Núm. 2 constituye poner en vigor una legislación *ex post facto*, lo que está vedado constitucionalmente. Para ello es menester realizar un examen minucioso del historial de lo que dispone nuestra Constitución sobre este asunto, y de nuestra propia jurisprudencia sobre el particular.

El Art. II, sección 12 de la Constitución del Estado Libre Asociado de Puerto Rico dispone que:

**"No se aprobaran leyes *ex post facto* . . ."**

Esta norma constitucional tiene como antecedente en Puerto Rico la disposición que aparecía en nuestra Carta Orgánica de 1917, conocida como el Acta Jones, que como parte de la declaración de derechos contenida en su segunda sección, disponía que:

**"No se aprobará ninguna ley *ex post facto* . . ."**

Esta disposición del Acta Jones fue objeto de interpretaciones nuestras en varias ocasiones. La primera de ella fue en Texas Co. v. Domenech, 50 D.P.R. 432, 448 (1936). Allí resolvimos escuetamente que determinadas enmiendas a la Ley de Rentas Internas de Puerto Rico, que establecían nuevos recargos y penalidades para ciertas violaciones de las leyes fiscales del país, no podían aplicarse a omisiones incurridas o actos realizados antes de la vigencia de dichas enmiendas, por ser estas disposiciones de naturaleza penal cuya aplicación retroactiva estaba prohibida por la Carta Orgánica.

Luego, en Loíza Sugar Co. v. Buscaglia, 63 D.P.R. 616, 619 (1944) resolvimos que nada en nuestro ordenamiento jurídico prohibía que se aprobasen leyes civiles con efecto retroactivo. Expresamente indicamos que la prohibición contra las leyes *ex post facto* aplicaba exclusivamente a leyes penales. **De modo expreso basamos tal dictamen en lo resuelto**

**específicamente en varias decisiones del Tribunal Supremo de Estados Unidos.**

Pocos años después, adjudicamos un caso en el cual un convicto de asesinato en segundo grado apeló su sentencia condenatoria, y solicitó que se le permitiese quedar en libertad mientras se tramitaba su apelación. La legislación vigente al cometerse el delito por el cual había sido juzgado disponía que un convicto que prestase una fianza quedaba libre mientras su sentencia condenatoria se apelaba. Pero mientras se celebraba el juicio del peticionario, la ley referida fue enmendada dejando a discreción del juzgador la libertad del convicto mientras éste apelaba la sentencia condenatoria. El convicto en el caso aludido impugnó el dictamen del tribunal de instancia denegando su libertad durante la apelación, aduciendo que la aplicación de la enmienda de la ley a su caso era *ex post facto*. Resolvimos que no le amparaba al peticionario la garantía en cuestión, porque el dictamen del foro *a quo* no afectaba un derecho del convicto, sino un privilegio. **Fundamentamos nuestra opinión principalmente en decisiones concretas del Tribunal Supremo federal**, que sostenían que "los privilegios procesales en casos penales estaban siempre bajo el control legislativo", por lo que la legislación aprobada después de cometido el delito no violaba la prohibición contra leyes *ex post facto*. Ex Parte Castro, 69 D.P.R. 988, 993-994 (1949).

Finalmente, meses más tarde, resolvimos dos casos poniendo en vigor la referida garantía del Acta Jones. En Pueblo v. López, 70 D.P.R. 790 (1980), el asunto ante nos

giraba en torno a la votación necesaria para que un jurado emitiese un veredicto de culpabilidad. La disposición del Código de Enjuiciamiento Criminal vigente al momento en que se cometió el delito en cuestión requería que el veredicto del jurado fuese unánime. Para el tiempo en que se vio el caso, el Código referido había sido enmendado para permitir una convicción por votación de tres cuartas (3/4) partes del jurado. Resolvimos que aplicarle al acusado en dicho caso la nueva disposición sobre votación de 3/4 partes sería perjudicial al acusado, y violaría la garantía contra leyes *ex post facto*. **En apoyo de nuestro dictamen, citamos una decisión del Tribunal Supremo de Estados Unidos[8] y varios comentarios eruditos sobre la doctrina de ese Tribunal sobre las leyes *ex post facto*** y resolvimos que no podía aplicarse el estatuto penal posterior al delito anterior, por ser perjudicial al acusado.

El otro caso resuelto en 1950 fue <u>Fernández v. Rivera, Jefe del Presidio</u>, 70 D.P.R. 900. Trataba de un acusado de asesinato, que fue convicto estando en vigor una disposición estatutaria que le negaba el privilegio de una sentencia suspendida a los convictos de asesinato. Sin embargo, al tiempo de la comisión del delito, la ley autorizaba la suspensión de sentencia aun para casos como el de este reo. Resolvimos que por ser perjudicial al convicto la ley más reciente, ésta no podía aplicársele porque la garantía contra leyes *ex post facto* lo vedaba. **Nos amparamos en decisiones**

---

[8] La decisión citada fue posteriormente revocada en 1989. El efecto de esta revocación se discute más adelante.

**del Tribunal Supremo de Estados Unidos, que repudiaban que en casos penales se aplicaran leyes posteriores a la comisión de un delito, que eran "perjudiciales" al acusado**.

De la jurisprudencia reseñada antes, es claro que al momento de celebrarse la Convención Constituyente de Puerto Rico, nuestras decisiones en conjunto delineaban una normativa sobre la prohibición de la Acta Jones sobre leyes *ex post facto*. Su esencia era que estaba proscrita la aplicación a un acusado de **cualquier legislación penal aprobada después de cometido el delito que se le imputaba a éste si tal aplicación hacía más perjudicial para el acusado la situación jurídica que éste encaraba al momento de cometer el delito**. **Ello amparado en los dictámenes del Tribunal Supremo federal sobre este asunto.**

Deben destacarse dos elementos de la referida jurisprudencia nuestra sobre la prohibición de leyes *ex post facto*. Uno es que hicimos valer dicha garantía con respecto a medidas que eran, **cuando menos**, arguiblemente **procesales** como lo es el estatuto relativo a la suspensión de sentencias penales, el relativo a cuál debe ser la mayoría de un jurado para que éste pueda emitir veredictos condenatorios, y el relativo a la ampliación de unas penalidades administrativas. El otro elemento es que prevaleció en esa jurisprudencia una política judicial nuestra **de seguir los dictámenes específicos del Tribunal Supremo de Estados Unidos** en nuestras propias decisiones sobre leyes *ex post facto*. Esa política judicial nuestra estaba tan arraigada que incluso nos llevó a la inconsistencia de resolver en Ex Parte Castro,

*supra*, que la garantía sobre leyes *ex post facto* no aplicaba a estatutos sobre **"privilegios procesales"** aunque luego hicimos valer dicha garantía **precisamente en relación a estatutos procesales** en Fernández v. Rivera, Jefe del Presidio, *supra*; y en Pueblo v. López, *supra*.

Es innegable, pues, que el rasgo más prominente de nuestra jurisprudencia sobre la garantía en contra de la aplicación de leyes *ex post facto* al amparo del Acta Jones fue **nuestra adhesión en ella a las decisiones concretas del Tribunal Supremo federal sobre el asunto, aunque no hubiese consistencia conceptual**. Es con este trasfondo que en 1952 se incorpora a nuestra Constitución la prohibición de leyes *ex post facto* que aparece en la Sección 12 de su Art. II.

El sentido y alcance de la actual disposición prohibiendo las leyes *ex post facto* fue expuesto en el Informe de la Comisión de Carta de Derechos de la Convención Constituyente:

> "Otro principio del derecho penal es *nulla poena sine lege*. De él deriva la prohibición de leyes *ex post facto*. Toda ley que perjudique la situación del acusado alterándola por lo que respecta al delito o a sus consecuencias se considera *ex post facto*. Tales serían aquellas que considerasen delictivo un acto tenido por inocente en el momento de su realización, o que hagan a un delito más grave de lo que era al ser cometido, o que alteren la pena e impongan castigos mayores que los fijados en el momento de cometerse el delito o que modifiquen las reglas de la prueba para exigir prueba inferior a la determinada por la ley en el momento de la comisión del delito."

4 Diario de Sesiones de la Convención Constituyente, pág. 2572 (Equity, ed. 1961).

Con arreglo a lo anterior, Don José Trias Monge ha hecho hincapié en que la referida prohibición contra las leyes *ex post facto* **se limitó a reproducir lo dispuesto sobre el particular en la Constitución de Estados Unidos**.[9] Lo mismo había indicado antes el Comisionado Residente y Presidente de la Convención Constituyente, Don Antonio Fernós Isern, al señalar expresamente que dicha disposición **era igual a la conocida prohibición que aparecía en la Constitución de Estados Unidos** y en las propias constituciones de la mayor parte de los estados de la Unión.[10]

En efecto, la explicación de lo que es una ley *ex post facto* incluida en el Informe de la Comisión de Carta de Derechos de la Convención Constituyente, citada antes, fue tomada textualmente de lo dictaminado por el Tribunal Supremo de Estados Unidos en el caso medular sobre este asunto de Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648 (1798), según lo acogimos nosotros mismos en Fernández v. Rivera, *supra*, a la pág. 903. Evidentemente, al aprobar nuestra propia disposición constitucional prohibiendo las leyes *ex post facto*, lo primordial que tomamos de nuestra jurisprudencia previa al 1952 **fue la arraigada adhesión de ésta a los dictámenes específicos del Tribunal Supremo federal**.

Es por el contundente historial anterior que venimos obligados a reconocer que lo dispuesto por nuestra propia Constitución prohibiendo las leyes *ex post facto* abarca

---

[9] Trias, *Historia Constitucional de P.R.*, Vol. III, pág. 197 (Ed. UPR, 1982).

[10] Fernós, *Original Intent in the Constitution of P.R.*, pág. 45 (2d Ed., Lexis-Nexis, 2002).

concretamente lo mismo que la idéntica disposición de la Constitución federal, según interpretada por el Tribunal Supremo de Estados Unidos, de la cual fue calcada. Por ello también este Tribunal debe hacer efectiva e interpretar la disposición referida de nuestra Carta de Derechos de la misma forma y con el mismo grado de protección que el Tribunal Supremo de Estados Unidos interprete y aplique la referida disposición de la Constitución federal. Véase, RCA v. Gob. de la Capital, 91 D.P.R. 416 (1964).

**Así, en efecto, lo hemos hecho una y otra vez**, en nuestra jurisprudencia sobre el particular, posterior a la relativa al Acta Jones. De ordinario, en los casos que hemos tenido ante nos luego de aprobada nuestra Constitución, en los que hemos dilucidado concretamente el asunto de la prohibición constitucional de leyes *ex post facto*, **hemos apoyado nuestros propios dictámenes concretamente en opiniones específicas sobre el particular del Tribunal Supremo de Estados Unidos**, tal como lo habíamos hecho antes del 1952. Véase, Pueblo v. Miranda, 79 D.P.R. 710, 716 (1956), en el cual acudimos a Lindsey v. Washington, 301 US 397 (1937), en apoyo de nuestro propio dictamen; Pueblo v. Pérez Méndez, 83 D.P.R. 539 (1981), en el que apoyamos nuestro dictamen en Duncan v. Missouri, 152 US 377 (1893); Pueblo v. Marcelo Martínez, 104 D.P.R. 20 (1957), en él apoyamos nuestro dictamen otra vez en Duncan v. Missouri, *supra*; Pueblo v. Lebrón González, 113 D.P.R. 81 (1982), en que nos apoyamos en Fernández v. Rivera, *supra*, y en Pueblo v. Pérez Méndez, *supra*, que a su vez estaban ancladas en

decisiones del Tribunal Supremo federal; Pueblo v. Pizarro Solís, 129 D.P.R. 911 (1992), en el cual nos apoyamos en Calder v. Bull, *supra*; Pueblo v. Rexach Beníntez, 130 D.P.R. 273 (1992), en el cual descansamos en Calder v. Bull, *supra*, y en Thompson v. Utah, 170 US 343 (1898); y finalmente, Pueblo en interés del menor FRF, 133 D.P.R. 172 (1993), en que apoyamos nuestro dictamen en lo pertinente en Collins v. Youngblood, 497 US 37 (1990).

Es menester destacar un dato muy pertinente al asunto que aquí nos concierne. En toda nuestra jurisprudencia sobre la garantía constitucional contra las leyes *ex post facto* siempre nos amparamos en lo decidido concretamente por el Tribunal Supremo federal, **sin pararnos a dilucidar hasta el caso de autos una cuestión conceptual muy neurálgica que ha surgido en la jurisprudencia del más alto foro judicial americano: la dicotomía de lo sustantivo vs. lo procesal**. Como bien ha señalado el profesor E. Chiesa en ***Derecho Procesal Penal de Puerto Rico y Estados Unidos***, Vol. II, Ed. Forum (1992), págs. 545, 561, luego de aplicar por décadas la garantía federal contra leyes *ex post facto* en todo tipo de caso, incluyendo los que sólo planteaban **cuestiones procesales**, **en 1990** el Tribunal Supremo de Estados Unidos dio un **"reversazo"** en Collins v. Youngblood, 497 U.S. 37 y en efecto resolvió que la garantía federal sólo aplicaba a la ley penal **substantiva y no a leyes procesales o de derecho probatorio**. En nuestra jurisprudencia, en cambio, aunque amparada siempre en decisiones concretas del Tribunal Supremo americano, la problemática distinción entre lo sustantivo y

lo procesal en lo referente a la garantía contra leyes *ex post facto*, **escasamente había asomado su cabeza hasta ahora**. Ello ha sido así aun en casos nuestros en los cuales el asunto en cuestión era al menos **arguiblemente procesal** y resolvimos que no existía una violación de la garantía constitucional contra leyes *ex post facto*. En tales casos **determinamos que no era aplicable la garantía en cuestión** amparándonos para ello en decisiones específicas del Tribunal Supremo federal **pero no mencionamos para nada la referida distinción entre lo sustantivo y lo procesal**. Tal fue la situación en Pueblo v. Pérez Méndez, *supra*, que trataba con el funcionamiento en salas de tres jueces de este Tribunal[11]; en Pueblo v. Marcelo Martínez, *supra*, que trataba sobre la validez de la creación de una subdivisión apelativa del Tribunal Superior; y en Pueblo v. Lebrón González, *supra*, que trataba sobre la aplicación de una regla de evidencia. Más aun, **en un caso sí aplicamos la garantía referida a una situación que es cuando menos arguiblemente procesal** pero no hicimos referencia a la distinción entre lo sustantivo y lo procesal. En Pueblo v. Pizarro Solís, *supra*, rechazamos aplicarle a un delincuente habitual una ley que excluía a

---

[11] En Pueblo v. Pérez Méndez, incluimos **una cita** de una antigua decisión del Tribunal Supremo de Estados Unidos, Duncan v. Missouri, 152 U.S. 377 (1894), emitida mucho antes de que ese Tribunal hubiese formulado la distinción entre lo sustantivo y lo procesal. Dicha cita aclara que la mera abolición de tribunales y la creación de otros nuevos, que no afecta derechos sustanciales de un acusado, no está dentro de la prohibición de la garantía contra leyes *ex post facto*. Obviamente poco tiene que ver con la distinción que excluye todo el derecho procesal del ámbito de esa garantía, que fue adoptada por el Tribunal Supremo de Estados Unidos casi 100 años después del caso de Duncan v. Missouri.

tales delincuentes de bonificaciones por buena conducta. La ley había sido aprobada luego de haberse dictado la sentencia condenatoria del delincuente habitual en cuestión. Citando la decisión del Tribunal Supremo federal en Calder v. Bull, *supra*, resolvimos que aplicar retroactivamente la ley excluyendo a delincuentes habituales de las bonificaciones respecto a las penas, sería aumentar el castigo del delito luego de consumados los hechos, lo que estaba prohibido por la garantía constitucional que prohíbe la aplicación de leyes *ex post facto*.

En efecto, en toda la extensa jurisprudencia en cuestión, a partir de 1952, hemos aludido brevemente a la distinción entre lo sustantivo y lo procesal respecto a la garantía en cuestión **en sólo dos ocasiones**. En una de ellas, **en una nota al calce**, en Pueblo en Interés del Menor F.R.F., *supra*, lo hicimos para señalar que es *ex post facto* "**aquella ley procesal que afecta derechos sustantivos del acusado**"; es decir, **aplicamos la garantía aún a determinadas leyes procesales**. La otra ocasión fue en Pueblo v. Rexach Benítez, *supra*, en el que sólo señalamos *in passim*, **en una breve y escueta oración**, que la ley que creaba el Fiscal Especial Independiente sólo incorporaba un cambio de derecho procesal que no caía bajo el ámbito de la prohibición contra las leyes *ex post facto*. Citamos para ello las decisiones del Tribunal Supremo federal en Calder v. Bull, *supra*, y Thompson v. Utah, *supra*, **ninguna de las cuales trataba sobre la distinción en cuestión como tal**, la que fue expresamente adoptada por el alto foro norteamericano **un siglo después**.

En resumen, pues, **durante siete décadas** hemos resuelto nuestros propios casos sobre la garantía referida **siguiendo siempre decisiones concretas del Tribunal Supremo de Estados Unidos**, y no sólo no hemos adoptado en Puerto Rico la distinción entre lo sustantivo y lo procesal como ese Foro la aplicó en 1990 en <u>Collins v. Youngblood</u>, **sino que hemos hecho valer la garantía *ex post facto* en al menos cuatro instancias que claramente involucraban leyes procesales**.[12]

A todo lo anterior hay que añadir que los principales comentaristas puertorriqueños sobre este asunto destacan que <u>Collins v. Youngblood</u> no sólo no ha sido seguido aquí en cuanto a la distinción referida, **sino que opinan además que dicha decisión no debe ser seguida en Puerto Rico en cuanto a excluir todo el derecho procesal del ámbito de la protección contra las leyes *ex post facto***. El profesor Ernesto Chiesa expresamente ha señalado que la protección contra leyes *ex post facto* debe ser aplicada a "aspectos procesales fundamentales". Chiesa, *supra*, págs. 560-561. La profesora Dora Nevares, por su lado, entiende que un cambio en el derecho procesal no cae bajo el ámbito de la prohibición contra las leyes *ex post facto* excepto cuando dicho cambio afecta adversamente al acusado. *Derecho Penal Puertorriqueño*, 4ta Ed. Rev., 2000, pág. 99.

Como en Puerto Rico no sólo no hemos adoptado la muy criticada distinción entre lo sustantivo y lo procesal,

---

[12] Debe resaltarse que en otros casos de normas procesales no hemos hecho valer la garantía *ex post facto*, lo que de por sí pone en relieve la fragilidad de la dicotomía substantivo-procesal.

aplicada en 1990 por el Tribunal Supremo federal en Collins v. Youngblood, sino que, por el contrario, hemos hecho valer la garantía en cuestión aún en varios casos en materia procesal, parece claro que **nos hemos adherido por décadas a la esclarecida corriente de pensamiento jurídico que estima que la distinción referida es en efecto muy frágil e inadecuada, como ha sido señalado reiteradamente en la crítica erudita**. En efecto, **la distinción entre lo sustantivo y lo procesal ha sido objeto de extensas críticas adversas, por muy diversas razones. Véase, sólo como una muestra de la extensa crítica erudita: L.B. Solum, *Procedural Justice*, 78 So. Calif. L. Rev. 181, 215 (2004); L. Kurlantzick, *"Retroactivity: What can we Learn From The Odd Case of Michael Skakel?"*, 36 Conn. L. Rev. 511, 517-519 (2004); E.I. Jacobs, *Is Ring Retroactive*?, 103 Columbia L. Rev. 1805, 1829 (2003); R. Brian Tanner, *"A Legislative Miracle: Revival Prosecutions And The Ex Post Facto Clauses"*, 50 Emory L.J. 397, 416-422 (2001); S.L. Chadwick, *The Disappearing Ex Post Facto Clause and Reviving-Time Barred Prosecutions"*, 30 Southwestern U.L. Rev. 197 (2000); J.E. Fisch, *Retroactivity And Legal Change*, 110 Harvard L. Rev. 1056, 1086-1087 (1997); M.A. Ihrig, *Retroactivity And Criminal Law: Procedurally Avoiding Constitutional Provisions*, 30 Univ. of Tulsa, L.J. 571, 591-598 (1995); M.A. Estrin, *Retroactive Application of the Civil Rights Act...*, 90 Mich. L. Rev. 2035, 2061-62 (1992); D.M. Risinger, *Substance and Procedure Revisited*, 30 U.C.L.A. Law Rev. 189 (1982).** Aun el propio Tribunal Supremo de Estados Unidos ha dicho que la distinción entre lo

substantivo y lo procesal es **_"a logical morass"_**, <u>Mistretta v.</u>

<u>U.S.</u>, 488 US 361, 392 (1989); y ha reconocido que las normas

de prescripción como la que aquí nos concierne pueden

considerarse a la vez como normas substantivas o procesales.

Véase, <u>Sun Oil Co. v. Wortman</u>, 486 US 717 (1988). Es por ello

que el eminente comentarista del Derecho Penal G.P. Fletcher

ha señalado lo siguiente, refiriéndose precisamente a la

aplicación a casos de prescripción, **<u>como es el de autos</u>**, de

la distinción entre lo substantivo y lo procesal en la

normativa sobre la prohibición de las leyes _ex post facto_:

> **"It seems as though we have a good idea of the difference between substantive rules and procedural rules. In many borderline cases, however, this distinction is hardly obvious. Take, for example, <u>the statute of limitations</u>... This looks like a procedural rule, but it could be interpreted as substantive..."** George P. Fletcher en _Basic Concepts of Criminal Law_, pág. 10 (Oxford Univ. Press, 1998).

Debe señalarse, además, que la norma de prescripción que

aquí nos concierne **<u>no puede ser considerada como una mera</u>**

**<u>norma procesal</u>** que justifique por ello la inaplicabilidad al

caso de autos de la garantía constitucional contra las leyes

_ex post facto_. La prescripción de los delitos es un asunto

inherentemente ligado a la naturaleza del acto punido. Por

ello, hay delitos que no prescriben nunca, otros que

prescriben a los diez años, a los cinco años o al año. 33

L.P.R.A. sec. 3412. Más aun el asunto de la prescripción está

regido en el propio Código Penal y no en las Reglas de

Procedimiento Criminal. Por estas razones y otras, muchas

jurisdicciones estiman con buen sentido que las normas de

prescripción **son un asunto substantivo**, al menos para fines

de la garantía *ex post facto*. Véase, Rubin v. State, 390 So.

2d 322 (Florida, 1980); US v. Auto Rental, 187 F. Supp. 603

(Pa. 1960); State v. Fogel, 492 P 2d 742 (Ariz. 1972);

McIlwain v. State, 294 S.W. 2d 350 (Ark. 1956); People v.

Rehman, 396 P 2d 913 (Cal. 1964); State v. French Funeral

Home, 448 A 2d 1037 (N.J. 1982). Un juez de un Tribunal

Supremo estatal ha resumido el asunto de esta manera en

Christmas v. State, 700 So. 2d 262, 273 (McRae, Miss. 1997):

> **The theory that statutes of limitations do not affect a defendant's substantive rights is irrational. Because any statute of limitations limits the circumstances under which guilt can be found and guarantees the accuracy and integrity of the adjudicatory process in criminal procedure, the statute operates as a substantive right for purposes of *ex post facto* analysis.**

Véase, además, State v. Hodgson, 740 P 2d 848 (Wash.

1987) y Hanna v. Plumber, 380 US 460, 471 (1965), en los

cuales tanto el Tribunal Supremo de Estados Unidos como el

del Estado de Washington señalan que la dicotomía

"substantivo-procesal" es poco útil porque su sentido varía

dependiendo del contexto legal en que se use:

> **"the line between 'substance' and 'procedure' shifts as the legal context changes. Each implies different variables depending upon the particular problem for which it is used".**

Cuando menos, pues, se trata de una dicotomía que tiende

a complicar el derecho más que a esclarecerlo.

Es por todo lo anterior que no debe este Tribunal

ampararse ahora en la endeble distinción entre lo substantivo

y lo procesal para resolver el importante caso de autos. **Adoptar dicha distinción ahora, <u>casi setenta años después del primero de numerosos casos en que ello pudo haberse hecho por este Tribunal</u>, y cuando dicha distinción está desacreditada doctrinalmente, constituiría un inexplicable retroceso.** Más aun, limitar la aplicación de la garantía constitucional en cuestión sólo a leyes de carácter sustantivo significaría imponer una restricción que no fue contemplada de modo alguno por los que formularon nuestra Constitución. No hay nada en el historial de ésta que permita ni siquiera suponer que la disposición vedando las leyes *ex post facto* tendría tal limitación.

Finalmente, no tiene mucho sentido jurídico basar nuestro dictamen en el caso de autos en un fundamento tan controversial, endeble y desacreditado como el de la dicotomía substantivo-procesal, cuando se puede apoyar sobre otras bases más sólidas. Veamos.


IV

En vista de la clara intención de los que redactaron nuestra Constitución de acoger mediante nuestra propia prohibición las decisiones concretas emitidas al amparo de la Constitución federal sobre las leyes *ex post facto*, y con arreglo a nuestra propia e invariable práctica jurisprudencial de adjudicar los casos que llegan ante nos sobre alegadas leyes *ex post facto* al amparo de determinaciones específicas del Tribunal Supremo federal, debemos ahora examinar brevemente una reciente decisión del

más alto foro judicial norteamericano estrechamente relacionada con el asunto que está planteado en el caso de autos, **y que nos sirve de ancla inicial para el principio general que lleva a la solución adecuada de este caso**.

En Stogner v. California, 539 US 607 (2003), se cuestionó la validez de un estatuto de California que permitía la presentación de cargos penales en casos de abusos sexuales contra menores de edad, **aunque el término para procesar al imputado se hubiere extinguido**, siempre y cuando el Estado iniciase la acción penal dentro de un año a partir de la querella de la víctima. El claro propósito de la legislación en cuestión era revivir determinados crímenes de abuso sexual contra menores cuyo breve término de prescripción de **tres años** había transcurrido. El estatuto referido se impugnó por tratarse alegadamente de una ley *ex post facto*.

El Tribunal Supremo de Estados Unidos resolvió en Stogner v. California, *supra*, que era inconstitucional cualquier ley que procurase extender el término prescriptivo de un estatuto penal <u>sólo si ésta se había aprobado luego de que dicho término hubiese expirado</u>. Expresa y reiteradamente resolvió, en cambio, que era válida cualquier ley que procurase extender el término prescriptivo penal <u>si ésta sólo ampliaba términos que aún no habían expirado</u>. Señaló el más alto foro judicial de Estados Unidos que:

> ". . .we agree that the State's interest in prosecuting child abuse cases is an important one. But there is also a predominating constitutional interest in forbidding the State to revive a long-forbidden prosecution. And to

> **hold that such a law is *ex post facto* does not prevent the State from extending time limits for the prosecution of future offenses, <u>or for prosecutions not yet time barred</u>.**" (Énfasis suplido.)

Así mismo, el Tribunal Supremo federal citó con aprobación un dictamen del Tribunal Supremo de Pennsylvania en <u>Commonwealth v. Duffy</u>, 96 Pa. 506, que había resuelto que:

> "**In any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws.**"

Es menester enfatizar que lo señalado por el Tribunal Supremo de Estados Unidos en <u>Stogner v. California</u>, *supra*, que hemos citado aquí, **<u>había sido por mucho tiempo antes la normativa bien establecida en la jurisprudencia de los tribunales supremos estatales</u>. <u>No se trata, pues, de una norma de nuevo cuño</u>.** A modo de ilustración, véase, <u>State v. Duffy</u>, 6 P. 3d 453 (Mont. 2000); <u>Christmas v. State</u>, 700 So. 2d 262 (Miss. 1997); <u>State v. Fiorenzano</u>, 690 A. 2d. 857 (R.I. 1997); <u>State v. Davenport</u>, 536 N.W. 2d 686 (N.D. 1995); <u>State v. Martin</u>, 643 A. 2d 946 (N.H. 1994); <u>State v. Schultzen</u>, 522 N.W. 2d. 833 (Iowa 1994); <u>State v. Petrucelli</u>, 592 A. 2d 365 (Vt. 1991); <u>Com. v. Johnson</u>, 553 A. 2d 897 (Pa. 1989); <u>Andrews v. State</u>, 392 So. 2d 270, (Fla. 1980); <u>State v. Wolfe</u>, 247 N.W. 407 (S.D. 1933); <u>People v. Buckner</u>, 117 N.E. 1023 (Ill. 1917).

**<u>Así mismo, la norma aludida por el Tribunal Supremo federal en Stogner v. California, *supra*, había sido aplicada</u>**

**antes por varios tribunales federales *a quo***. Véase, <u>U.S. v. Madia</u>, 955 F 2d 538 (1992); <u>U.S. v. Richardson</u>, 512 F 2d 105 (1975); <u>U.S. v. Haug</u>, 274 F 2d 885 (1960); <u>U.S. v. Waggener</u>, 138 F. Supp. 107 (1956); y <u>U.S. v. Kurzenknabe</u>, 136 F. Supp. 17 (1955).

De hecho, una de las primeras decisiones federales en la que se validó la norma de que se puede extender legislativamente el periodo prescriptivo aplicable a algún delito concreto mientras dicho periodo no haya expirado aún en el caso en cuestión, fue <u>Falter v. U.S.</u>, del 2do. Circuito que fue resuelto **en 1928** por el distinguido jurista **Learned Hand**. Éste explicó lo siguiente sobre el particular:

> **[I]t is one thing to revive a prosecution already dead, and another to give it a longer lease on life. The question turns upon how much violence is done to our instinctive feeling of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set... (23 F 2d 420, 425-26).**

De especial interés para nosotros es un dictamen en el mismo sentido del Tribunal de Distrito federal de Puerto Rico hace varias décadas en <u>U.S. v. Vidal</u>, 155 F. Supp. 180 (1957). En este caso, el imputado cuestionó por ser *ex post facto* un estatuto federal que ampliaba de tres a cinco años el término prescriptivo del delito por el cual se le acusaba. El tribunal resolvió que la ley en cuestión era válida, en vista de que fue aprobada estando aún vigente el anterior término prescriptivo. El foro federal de Puerto Rico se

amparó en decisiones federales análogas emitidas por otros dos tribunales federales. **Así que en nuestro propio ámbito judicial ya era conocida la norma expuesta por el Tribunal Supremo de Estados Unidos en Stogner v. California, y por Learned Hand en Falter v. United States**.

Es menester señalar que después de la decisión de Stogner v. California, *supra*, **otros foros judiciales han aplicado la normativa expuesta por el Tribunal Supremo de Estados Unidos en dicha decisión a otros casos con hechos similares a los de autos**. Véase, State v. Martin, 849 A. 2d 138 (2004); State v. Steele, 802 N.E. 2d 1127 (Ohio 2003); People v. Robertson, 6 Calif. Rptr. 3d 363 (2003).

Finalmente, debe indicarse que la normativa señalada por el Tribunal Supremo federal sobre el alcance de la prohibición constitucional contra las leyes *ex post facto* coincide también con lo que antes había expuesto doctrinalmente sobre el particular el eminente comentarista George P. Fletcher en *Basic Concepts of Criminal Law*, a las págs. 7-24 (Oxford Univ. Press, 1998). **Se trata, pues, de una normativa de hondas, antiguas y extensas raíces, con amplio y distinguido apoyo judicial y doctrinal**.

Veamos entonces como aplica al caso de autos la expectable norma en cuestión.

V

Según indicáramos antes, a la fecha en que se aprobó la Ley Núm. 2 que aquí nos concierne, los delitos luego imputados a Candelario **aún no habían prescrito**. Al 1 de enero

de 1998 la víctima Elizabeth Castro Pérez no había cumplido todavía los dieciocho años de edad, por lo que el Ministerio Público **aún tenía cinco años y dos días para presentar cargos contra Candelario** por la alegada comisión de los delitos de violación técnica y tentativa de violación. Al entrar en vigor de inmediato la referida Ley Núm. 2 el 1 de enero de 1998, el término prescriptivo con relación a los hechos luego imputados a Candelario se extendió **válidamente** hasta cinco años a partir de que la víctima cumpliese la edad de veintiún años; es decir, hasta **el 3 de enero de 2006**. Como la Ley Núm. 2 en cuestión tuvo el efecto de ampliar un término prescriptivo que aún no se había extinguido, dicha legislación **no es *ex post facto***, conforme a la respetable normativa reseñada antes, que por su eminente razonabilidad y su autoritativo sostén judicial y doctrinal de hondas y extensas raíces, debemos acoger en nuestro propio ordenamiento jurídico.


                              VI

    Finalmente, existe otro fundamento más en que se apoya nuestro dictamen aquí. Como se sabe, la prescripción en el derecho penal no responde a precepto alguno de orden constitucional *sino a un acto de gracia legislativa cuyo origen es puramente estatutario*. Pueblo v. Vallone, 133 D.P.R. 427 (1993). De ordinario, pues, el Estado que fija la prescripción también puede variarla libremente. El propósito esencial de esta figura jurídica es proteger al acusado de estar expuesto a un proceso criminal **por un tiempo**

**indeterminado**. <u>Pueblo v. Oliver Frías</u>, 118 D.P.R. 285, 291 (1987). Mediante la prescripción en el derecho penal se le informa al imputado de la intención del Estado de procesarle, con suficiente **anticipación** para que no menoscabe su oportunidad de defenderse porque la evidencia disponible para ello desaparezca o se oblitere por el transcurso del tiempo. <u>Pueblo v. Tribunal Superior</u>, 84 D.P.R. 24 (1961). **No están involucrados derechos mayores que éstos**. Por eso, nadie tiene derecho a invocar un término prescriptivo antes que éste en efecto haya transcurrido según lo dispone concretamente la legislación que lo establece.

En el caso de autos, al momento en que se presentaron las denuncias aquí, no se había consolidado aún la defensa de prescripción para el peticionario, al amparo de la única legislación sobre el particular que estaba en vigor. El peticionario no tenía más derechos que lo que esa legislación le otorgaba.

En virtud de todo lo anterior, es menester resolver que las denuncias presentadas contra Candelario el 16 de marzo de 2004 imputaban delitos que todavía no se habían extinguido. Procede, pues, que se confirmen los dictámenes de los foros *a quo*.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO